356 So.2d 974 (1978)
STATE of Louisiana
v.
Tyronne MITCHELL.
No. 60661.
Supreme Court of Louisiana.
March 6, 1978.
Rehearing Denied April 6, 1978.
*976 Horace P. Rowley, III, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Vincent Paciera, Jr., Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Tyronne Mitchell was charged by the grand jury in the same indictment with three separate counts of aggravated rape in violation of La.R.S. 14:42. After trial by jury, defendant was found guilty as charged on counts one and three and guilty of forcible rape on count two. The trial judge sentenced defendant to death on counts one and three and to imprisonment at hard labor for twenty years, with credit for time served, on count two. Subsequently, the trial judge annulled and set aside the death sentences and resentenced defendant to serve twenty years at hard labor on count one and fifty years at hard labor on count three, both sentences with credit for time served. The court further ordered that the sentences on all three counts run concurrently. On appeal, defendant relies on nine assignments of error for reversal of his convictions and sentences.[1]
*977 ASSIGNMENT OF ERROR NO. 1
Defendant claims reversible error based on the fact that an assistant city attorney represented him at trial.
Defendant was represented at trial by retained counsel, Mr. Arthur L. Harris, Sr. Apparently, Mr. Harris also held a position as an assistant city attorney, assigned to prosecute cases in traffic court. After trial, Mr. Harris filed and was granted a motion to withdraw as counsel of record on the ground that defendant was financially unable to retain an attorney on appeal and wished to be represented by the indigent defender board. New counsel was appointed to represent defendant on appeal.
La.Const. art. 5, § 26(C) provides:
Prohibition. No district attorney or assistant district attorney shall appear, plead, or in any way defend or assist in defending any criminal prosecution or charge. A violation of this Paragraph shall be cause for removal.
La.Code Crim.P. art. 65 provides in pertinent part:
It is unlawful for the following officers or their law partners to defend or assist in the defense of any person charged with an offense in any parish of the state:
(1) Any district attorney or assistant district attorney . . . .
La.Code Crim.P. art. 934(5) provides:
Except where the context clearly indicates otherwise, as used in this Code:
`District Attorney' includes an assistant district attorney, and where the prosecution is in a city court, includes the prosecuting officer of that court.
The law clearly prohibits a district attorney or his assistant from defending or assisting in the defense of any criminal prosecution. La.Const. art. 5, § 26(C); La. Code Crim.P. art. 65. Where the prosecution is in a city court, the prosecuting officer of that court is considered a district attorney and is thus included within that prohibition. La.Code Crim.P. art. 934(5).
However, the prosecuting officer of a city court is not included within the definition of district attorney for purposes of prosecutions in courts other than a city court and, therefore, is not included within the prohibition. Hence, the assistant city prosecutor is not prohibited from defending a criminal prosecution in the state district court. Additionally, we note that Mr. Harris was retained counsel and that defendant does not even allege he was unaware that Mr. Harris was also an assistant city attorney. Also, the record reflects that defendant was effectively represented by Mr. Harris. Under these circumstances, we find no possible prejudice to the rights of defendant. Hence, Mr. Harris' representation of defendant at trial in the state district court was not improper.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial judge erred in admitting in evidence a photograph of a lineup at which defendant was identified by the victims of two of the alleged rapes. Defendant argues that the fairness of the lineup was not at issue and, therefore, the photograph was irrelevant.
La.R.S. 15:441 provides:
Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.
The photograph of the lineup was admissible in the instant case to explain a relevant fact, i.e., that two of the rape victims identified defendant as their assailant from among several men of similar appearance. This fact was relevant to the issue of identity which was contested by defendant. The admissibility of a photograph *978 of the lineup is not dependent upon the defendant contesting the fairness thereof. See, State v. Valentine, 262 La. 571, 263 So.2d 893 (1972). Hence, the trial judge did not err in admitting in evidence the photograph of the lineup.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in denying his motion for a severance of the three aggravated rape offenses charged in the indictment.
Defendant filed a pretrial "Motion to QuashPrejudicial Joinder" requesting a separate trial on each of the three offenses charged in the indictment. After a hearing, the motion was denied.
When an accused has been charged in the same indictment with two or more offenses pursuant to La.Code Crim.P. art 493, he may apply for a severance of offenses under La.Code Crim.P. art 495.1 which provides:
The court, on application of the prosecuting attorney, or on application of the defendant shall grant a severance of offenses whenever:
(a) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or
(b) if during the trial upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. The Court shall consider whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.
Two critical questions must be determined by the trial judge presented with a motion for severance of offenses. First, he must decide "whether, in view of the number of offenses charged and the complexity of the evidence . . . offered, the trier of fact [could] distinguish the evidence and apply the law intelligently as to each offense." La.Code Crim.P. art. 495.1; State v. Holstead, 354 So.2d 493 (La.1977); State v. Proctor, 354 So.2d 488 (La.1977). A second question to be decided is whether the offenses joined because they are of the "same or similar character" under La.Code Crim.P. art 493 (as opposed to "same transaction" or "common plan" joinder) are admissible as similar acts under La.R.S. 15:445 and 446. State v. Holstead, supra; State v. Carter, 352 So.2d 607 (La.1977).
In relation to the first question, in deciding whether the complexity of the evidence warrants severance of the offenses, an appellate court evaluating the trial judge's denial of defendant's motion will examine the case for various problems:
Some of the dangers inherent in a multiple offense joinder situation are that the jury may become confused in trying to apply the applicable law and evidence to the correct offense; that the jury may consider that a person charged with doing so many things is a bad man who must have done something, a feeling that might lead to a cumulation of the evidence; that the judge might find it difficult to adequately charge a jury as to the law with respect to each offense; that the prosecutor may find it troublesome to present his evidence in a compartmentalized and understandable manner; and that a defendant may be confounded or embarrassed in his defense because of the sheer number or complexity of the charges against him.
State v. Proctor, supra. Also cited in State v. Holstead, supra.
In the instant case, defendant was charged in the same indictment with committing on separate occasions aggravated rape of three women. The state's evidence consisted primarily of the testimony of the three victims describing in clear and simple terms occurrences largely similar in nature. Moreover, since all charges were for a violation of the same statute (La.R.S. 14:42), there should have been no confusion in the application of the law to the various incidents. *979 Under these circumstances, we find that the non-complex nature of the evidence and the singularity of the applicable law rendered the case appropriate for trial in a joined situation. We therefore find in this case that the trier of fact could compartmentalize the evidence and apply the law intelligently as to each offense and that defendant was not unfairly convicted on the basis of prejudice or confusion instead of on the evidence of his crimes. La.Code Crim.P. art. 495.1; State v. Holstead, supra; State v. Proctor, supra.
We next consider whether the offenses joined under La.Code Crim.P. art. 493 because they are of the "same or similar character" are admissible as similar acts under La.R.S. 15:445 and 446.[2]State v. Holstead, supra; State v. Carter, supra. In order to be admissible under this exception, the other crimes must first be so distinctively similar as to preponderantly demonstrate that their perpetrator must be the same person. State v. Jackson, 352 So.2d 195 (La.1977); State v. Slayton, 338 So. 694 (La.1976); State v. Waddles, 336 So.2d 810 (La.1976). The proof of the other crimes must also be relevant to prove a fact of consequence to the accused's present innocence or guilt (independent of the inadmissible purpose to infer that the accused committed the present crime because he had committed the other one). State v. Jackson, supra; State v. Frederick, 340 So.2d 1353 (La.1976). Finally, the probative value of the evidence of the other crime must outweigh its prejudicial effect. State v. Jackson, supra; State v. Ledet, 345 So.2d 474 (La.1977); State v. Moore, 278 So.2d 781 (La.1973) (on rehearing).
In the instant case, the three alleged rapes, occurring over a five-month period, exhibit almost identical modus operandi. Each of the three victims were initially approached by their assailant near the Algiers ferry landing at the end of Canal Street. All three incidents occurred during the mid-morning hours when the ferry traffic is light. On each occasion, the assailant initiated contact with his victim by asking her for small change. Thereafter, each of the three victims was forced by various methods to leave the ferry area with their assailant and was initially raped within a short distance thereof, near the riverfront. All three of the victims were eventually released by their assailant. We consider that the modus operandi of the three offenses is so peculiarly distinctive that one must logically say that they are the work of the same person, i. e., they are "signature crimes."
Next, we must determine whether the evidence of other crimes is relevant to prove a fact of consequence to defendant's innocence or guilt. Defendant admits that the identity of the assailants was a principal issue at the trial.
During trial, defendant offered the testimony of two alibi witnesses, Frazeana Mitchell and her daughter, Debra Ann Thompson. These two women testified that defendant cared for Ms. Thompson's child at Ms. Mitchell's home on Saturdays and Sundays during the time of the first two rapes. (The first two rapes were allegedly committed on Saturday, August 9, 1975, and on Sunday, October 19, 1975.) Defendant also introduced misidentification evidence through the testimony of two witnesses. Lowary Bartney, Sr., a private investigator, testified that he showed a photograph of defendant and Ms. Thompson to Rudolph M. Schulz of the Mississippi River Bridge Authority Police Department. Mr. Bartney stated that Officer Schulz identified *980 the man in the photograph as Leon Sanders, not as defendant. Officer Schulz testified that the man in the photograph looked like a person named Leon Sanders, "one of the locals over in Algiers," or another person with whom they had experienced problems on the ferry.
Clearly, identification of defendant as the assailant in each of the offenses charged was a serious issue at the trial of this matter. The evidence of the other crimes was relevant to that issue in the proof of each offense. The showing of an almost identical modus operandi and the identification of defendant as the assailant in the other two offenses strengthens identification in each of the three rape charges. Additionally, defendant admits that the degree of the offenses was also a principal issue at the trial. The testimony of each victim regarding the force used by the assailant in each rape offense strengthens the testimony of the others on that issue. Hence, the evidence of the other two offenses was relevant to prove facts of consequence (identity and use of force) to defendant's guilt or innocence on each of the offenses charged in the indictment.
Finally, the probative value of the evidence of each rape, relating to the proof of identity and use of force in the other two offenses, clearly outweighs its prejudicial effect. Hence, the offenses joined in the indictment would be admissible as similar acts under La.R.S. 15:445 and 446. Accordingly, the trial judge did not err in denying defendant's pretrial motion for a severance of offenses.
Defendant reurged his motion for severance of offenses at the close of the state's case-in-chief. See, La.Code Crim.P. art. 495.1(b). At this point, the trial judge was aware of the non-complex nature of the evidence and thus was in a better position than he was prior to trial to determine the merits of defendant's motion. Applying the same guidelines to appellate review as to a denial of a pretrial motion for severance of offenses as well as reviewing the record as of the point during trial at which the motion was made, we are convinced that the trial judge did not err in denying defendant's motion for severance of offenses at the close of the state's case-in-chief.
Assignment of Error No. 5 is without merit.

ASSIGNMENT OF ERROR NO. 6
Defendant contends the trial judge erred in allowing in evidence certain testimony relative to the history of a ring seized from defendant. He argues that this testimony was irrelevant and improperly reflected upon the character of defendant.
During trial, Officer Catalino Melendez identified a high school class ring recovered by him from defendant's coat pocket at the time of his arrest. The victim of the third alleged rape testified that her assailant showed her a 1974 Chalmette High School class ring with the initials "M.A.D." on it, which ring defendant had removed from his pocket. Officer Debra Langla testified that she personally checked the records at Chalmette High School and discovered that only two students from the class of 1974 had the initials "M.A.D." She stated that one of the students had possession of his ring whereas the other student, Michael Anthony Dugas, did not have his ring. Mr. Dugas testified that he had given his ring to his girlfriend, Roxanne Malero. Ms. Malero testified that she had lost the ring while shopping on Canal Street. Both Mr. Dugas and Ms. Malero identified the ring taken from defendant and produced at trial as Mr. Dugas' ring.
The record reveals no objection was made to the testimony given by these witnesses. Moreover, no objection was made at the time the ring was introduced in evidence. In the absence of a contemporaneous objection, an alleged error or irregularity in the proceedings cannot be availed of after verdict. La.Code Crim.P. art. 841; State v. Williams, 343 So.2d 1026 (La.1977); State v. Finley, 341 So.2d 381 (La.1976); State v. Knight, 323 So.2d 765 (La.1975). In any event, the testimony concerning the ring was relevant to the issue of identity by *981 showing that the ring taken from defendant at the time of his arrest was the only one of its kind unaccounted for and was, therefore, the same ring shown to the victim of the third alleged rape by her assailant. Moreover, there is no indication in the record that the ring was stolen by defendant. Hence, the testimony about the ring did not improperly reflect upon defendant's character.
Assignment of Error No. 6 is without merit.

ASSIGNMENT OF ERROR NO. 8
Defendant contends the trial judge erred in allowing in evidence the testimony of the arresting officers relative to the fact that defendant fit the description of the rape suspect which was broadcast over the police radio. He argues that this testimony was hearsay.
During trial, while Officer Melendez, one of the arresting officers, was testifying concerning a call received over the police radio prior to his arresting defendant, defendant objected to the admission of any testimony about the content of the call. Subsequently, defendant's specific objection to the officer's testimony relating to the description of the rape suspect broadcast over the police radio was sustained. However, defendant made no objection to Officer Melendez' later testimony describing the person he arrested as fitting the description of the suspect received over the police radio. Nor did defendant object to the testimony of Officer Robert Breaux, the other arresting officer, that the person arrested had the same appearance as the description of the suspect given over the police radio. Defendant argues that the state by this line of questioning was able to indirectly get the description of the rape suspect given over the police radio before the jury.
It is well settled that, in the absence of a contemporaneous objection, an alleged error or irregularity in the proceedings cannot be availed of after verdict. La.Code Crim.P. art. 841; State v. Williams, 343 So.2d 1026 (La.1977); State v. Finley, 341 So.2d 381 (La.1976); State v. Knight, 323 So.2d 765 (La.1975). However, even assuming that defendant's original objection to any testimony about the content of the call was adequate to preserve the present issue for review, the assignment lacks merit.
A well-settled rule is that evidence is non-hearsay which is offered not to prove the truth of the facts recited, but to prove that the utterances occurred. State v. Cass, 356 So.2d 936 (La.1977); State v. Williams, 341 So.2d 370 (La.1976); State v. Monk, 315 So.2d 727 (La.1975); State v. White, 301 So.2d 321 (La.1974). In the instant case, whether or not the arresting officers testified as to the description of the rape suspect broadcast over the police radio is of no moment as this testimony was not hearsay because it was offered to prove only that the description was given, thereby prompting the officers to arrest defendant, and not to prove the truth of the description. Hence, the trial judge did not err in admitting the testimony in evidence.
Assignment of Error No. 8 is without merit.

ASSIGNMENT OF ERROR NO. 9
Defendant contends the trial judge erred when he excused for cause nine jurors challenged by the state based on their sentiments regarding the death penalty.
The record reveals that no objection was made to the excusal of the jurors. In the absence of a contemporaneous objection, an alleged error or irregularity in the proceedings cannot be availed of after verdict. La. Code Crim.P. art. 841; State v. Williams, 343 So.2d 1026 (La.1977); State v. Finley, 341 So.2d 381 (La.1976); State v. Knight, 323 So.2d 765 (La.1975). In any event, this assignment lacks merit. La.Code Crim.P. art. 798 provides in pertinent part:
It is good cause for challenge on the part of the state, but not on the part of the defendant, that: . . .
(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and *982 makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt . . . .
This article was amended to conform with the decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), wherein the United States Supreme Court held that the exclusion of prospective jurors in a capital case who merely expressed conscientious or religious scruples against capital punishment violates an accused's constitutional rights under the sixth and fourteenth amendments with respect to the jury's role as arbiter of the punishment to be imposed. On the other hand, the Court found no constitutional bar to excluding jurors who stated in advance of trial that they could not return a verdict of guilty under any circumstances, regardless of the proof at trial.
After carefully examining the record of voir dire examination, we are satisfied that each of the nine jurors, after questioning by both the state and defendant, were properly excused in strict compliance with the standards set out in Witherspoon and La.Code Crim.P. art. 798(2). The responses made by these prospective jurors clearly indicated that, regardless of the evidence, they would not concur in a verdict of "guilty of aggravated rape" because of their refusal to apply the death penalty required by statute upon conviction.
Moreover, the mandatory death penalty provision of our aggravated rape statute was invalidated by the United States Supreme Court decision in Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976). In the instant case, the trial court annulled and set aside the death sentences on counts one and three and resentenced defendant to specified prison terms on those counts. We have uniformly held that a defendant insulated from the death penalty has no valid Witherspoon complaint. State v. Ross, 343 So.2d 722 (La. 1977); State v. Nicolaus, 340 So.2d 296 (La. 1976); State v. Hunter, 340 So.2d 226 (La. 1976); State v. Miles, 339 So.2d 735 (La. 1976); State v. Rester, 309 So.2d 321 (La. 1975).
Assignment of Error No. 9 is without merit.
Defendant contends for the first time in brief to this court that the trial judge erred by selecting the jury panel in violation of La.Code Crim.P. art. 784. He argues that the names of prospective jurors were not "drawn from the petit jury venire indiscriminately and by lot in open court" but, rather, were called in the order appearing on the jury panel sheet. Defendant further argues that, although no contemporaneous objection was made to the alleged error, the issue can be considered on appeal as error patent on the face of the record.
First, we reject defendant's contention that the alleged error is one "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La.Code Crim.P. art. 920(2). Clearly, the system used to call names of prospective jurors is not discoverable by a mere inspection of the pleadings and proceedings. Rather, an inspection of the evidence would be necessary. Hence, the alleged error or irregularity cannot be considered on appeal unless it was objected to at the time of occurrence[3] and designated as error in the assignment of errors. La. Code Crim.P. arts. 841, 845 and 920(1).
In any event, the assignment lacks merit. This court stated in State v. Hoffman, on rehearing, 345 So.2d 1 (La.1977):
In the instant case, the jury panel was not selected in compliance with La.Code *983 Crim.P. art. 784. Prospective jurors were called by the trial judge in the order that their names appeared on the jury panel sheet compiled by the Jury Commission. Clearly, the panel was not drawn indiscriminately and by lot in open court as mandated by law. Hence, defendant's objection is well founded and we conclude that his conviction and sentence must be reversed. We cannot say, however, that the violation complained of herein is one which affects the determination of guilt or innocence in this case. Accordingly, having authoritatively construed and reconciled La.Code Crim.P. arts. 409.1 and 784 for the first time and contrary to the prior construction placed on these articles by a majority of the judges of the Criminal District Court for the Parish of Orleans, we have determined that the interests of the administrative of justice would best be served by giving this decision prospective application only to those cases wherein a jury panel is selected after this opinion becomes final except those cases which have already been submitted to this court for decision. (Emphasis added.)
Defendant argues that the instant case was "submitted" to this court prior to rendition of Hoffman because the order of appeal was signed prior to Hoffman, thus vesting this court with jurisdiction over the case.
La.Sup.Ct.R. 5, § 1 states: "Motions to be made in open court shall be made at the beginning of the daily session, before the first case is called for argument or submission." (Emphasis added.) Rule 6, § 6 states: "Any case docketed in this court may be submitted at any time for decision without oral argument, on a joint motion to that effect signed by all parties to the suit or their attorneys of record." (Emphasis added.) See also, La.Sup.Ct.R. 3, § 2 and R. 7, § 11. It is clear that, in Hoffman, the term "submitted" to this court signifies that stage of appellate proceedings at which both parties have either exercised or waived their rights to orally argue the case. The term does not signify, as defendant contends, the date on which the order of appeal is rendered.
Defendant, however, further contends that there was unreasonable delay in lodging the record on appeal, preventing the instant case from being argued and "submitted" to this court prior to Hoffman. We find no merit to this contention. Defendant admits that no objection was made at the time the prospective jurors' names were called because Hoffman had not yet been decided. Hence, even had the record in the instant case been prepared, lodged, argued and submitted prior to this court's decision in Hoffman, the alleged error would not have been reviewable by this court in absence of defendant's objection to the alleged error or irregularity at the time of its occurrence.

DECREE
For the reasons assigned, the convictions and sentences are affirmed.
TATE, J., dissents and assigns written reasons.
DIXON, J., dissents with reasons.
CALOGERO, J., dissents. State v. Moore, 278 So.2d 781 (La.1972) is pertinently indistinguishable.
TATE, Justice, dissenting.
I respectfully dissent. In my opinion, the state improperly joined in one trial three charges of rape, which although similar in circumstances of commission were widely separated in time.
Initially, I might state, some concern was felt by the writer that State v. Carter, 352 So.2d 607 (La.1977) should perhaps not be applied retrospectively. Carter held that the test for severance, when two crimes of the same or similar character are joined in the same indictment, La.C.Cr.P. art. 492, is whether these crimes would be admissible under the Prieur test as other-crime evidence in the trial of each offense charged, if tried separately.
Under the Prieur test, for reasons to be stated, the respective rapes are not admissible *984 as other-crime evidence to prove guilt of a rape other than the one charged. Arguably, strict requirement of Prieur compliance might not be required in the decision of this severance question, especially since the present case was tried before Carter clarified the guidelines. Nevertheless, I ultimately conclude that the defendant did not receive a fair trial because of the joinder in a single trial of three charges of rapes over a period of several months. Were the present prosecution for just one of the three rapes, plainly in my opinion, the evidence of the other two rapes is not admissible.
Since neither intent nor guilty knowledge is at issue in a rape prosecution, the only arguable ground for Prieur admissibility (and therefore for denial of a motion to sever under La.C.Cr.P. art. 495.1) is the "system" exception. Recently, in State v. Jackson, 352 So.2d 195 (La.1977), the court reviewed the jurisprudence which has grown from that exception. In order to be admissible, the other crime must be committed in close proximity to the charged offense, both in time and place. See State v. Jones, 332 So.2d 466 (four days apart at the same location); State v. Price, 325 So.2d 780 (La.1975) (series of five robberies, within three weeks, of drivers for certain beverage distributor; State v. Vince, 305 So.2d 916 (La.1974) (three weeks apart in same general area); State v. Lawrence, 294 So.2d 476 (La.1974) (sixteen days apart on same street). The crimes must also be "so peculiarly distinctive that one must logically say that they are the work of the same person." State v. Lee, 340 So.2d 1339, 1345 (concurring opinion of Justice Dennis) quoted in State v. Jackson, 352 So.2d at 196. Finally, the evidence of the other crime must be relevant to prove a fact of consequence in the instant prosecution, and the probative value of the evidence must outweigh its prejudicial effect.
In the present case, the circumstances surrounding the three rapes were highly similar, and the crimes might possibly be classified as so alike that they amount to the "signature" of the criminal. But that is only the first hurdle this evidence must clear in order to be admissible.
An initial difficulty is the question of proximity in time among the offenses. None of the cases listed have involved a span of longer than three weeks, whereas the present case involves a span of five months. The evidence must also be shown to be so probative of a fact of consequence that its relevancy outweighs its prejudicial effect. A dual inquiry is thus involved: whether identity, which this "system" evidence tends to prove, is a fact of consequence and whether the need for probative evidence of identity is so great as to justify admitting this highly prejudicial evidence. Whether identity is a fact of consequence depends upon the clash of evidence before the jury.
Each of the victims positively identified the defendant as her attacker, and their identifications were unshaken by cross-examination. The bulk of the defendant's case was the testimony of security guards who were on duty on the days of the rapes in the buildings within which they allegedly took place. They all testified that they had noticed no disturbances in the buildings, although the force of that testimony was substantially weakened by their admission that they might have been out of the building, in the bathroom, on patrol, etc., and that absence could account for their failure to notice any disturbances. In any case, this part of the defendant's case tended to show that no crimes took place and that the prosecutrices were lying. The evidence was not offered to show that the defendant was not the rapist.
The defendant did, however, offer an alibi by means of two witnesses, his girlfriend and her mother. The latter testified that on Saturdays and Sundays, when her daughter was at work, the defendant would spend all day attending her daughter's baby. She testified that this regimen continued during the entire period within which the rapes occurred. Her daughter was put on to testify to the same effect, but since defendant's whereabouts on those days was admittedly beyond her personal *985 knowledge, the testimony was objected to and excluded.
Considering each rape in isolation (and the other two as the proposed "other crimes" evidence), the evidence as to the defendant's guilt was a positive identification by the victim against an attack on the victim's credibility and a relatively weak alibi (because unsupported by defendant's own testimony). In fact, the alibi testimony could more properly be characterized as supportive of a general defense alleging prosecutorial conspiracy than as evidence designed to put at issue the identity of the perpetrator of an admitted offense. The thrust of the defendant's case was, "I'm an innocent babysitter, who's being framed by three lying witnesses." In this light, his offering of an alibi should not be considered to raise the issue of identity of the offender to a "fact of consequence."
Some instruction is offered by comparison to earlier cases in which identity was found to be an important issue. In State v. Ballard, 351 So.2d 484 (La.1977), the victim testified that his robber partially hid his face with a handkerchief, and the identification was therefore subject to strong attack. As aforementioned, this is not the case here, since each of the victims got a long clear look at her attacker and each declared herself "positive" that the defendant was the rapist. In State v. Vince, 305 So.2d 916 (La.1974) the court merely observed that "identification of the defendant was a serious issue." 305 So.2d at 922. While not clear from the discussion, presumably the nature of the evidentiary clash put at issue the identity of the perpetrator of an admitted offense.
Even if the identity issue is considered as a "fact of consequence," it is highly questionable that the need for probative testimony was so great that it outweighed the prejudicial effect of this evidence. Clearly, whatever else this "system" evidence might prove, it impressed upon the jury the fact that three women were willing to identify the defendant positively as a rapist. The effect of this testimony is synergistic,[1] and it is precisely this effect which Prieur sought to avoid. It is simply less likely that three women would falsely accuse a man of rape than that one would, and therefore a defense based on attacking the prosecutrix's credibility is substantially weakened by the admission of the other crimes evidence.
For these reasons, it is the writer's belief that prejudicial, and therefore reversible, error was committed in denying the defendant a severance both as to his pretrial and his trial motions.
DIXON, Justice (dissenting).
I respectfully dissent.
A reading of the testimony discloses clearly that, although the offenses occurred in the same vicinity and the approach to the victims was similar, these were not "signature" crimes.
NOTES
[1] Defendant has neither briefed nor argued Assignments of Error Nos. 2, 4 and 7. Therefore, we consider these assignments of error to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975).
[2] La.R.S. 15:445 provides:

In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.
La.R.S. 15:446 provides:
When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged.
[3] In State v. Hoffman, 345 So.2d 1 (La.1977), where a similar issue as presented here was reviewed by this court, defendant objected to the alleged procedure before the first prospective juror was called on voir dire examination. Moreover, he made his objection general as to each juror selected and sworn. Hence, in Hoffman, it was unnecessary to reach the contention raised here.
[1] The writer is indebted to the defendant's brief for this term. A synergism is "cooperative action of discrete agencies such that the total effect is greater than the sum of the effects taken independently."