370 So.2d 557 (1979)
STATE of Louisiana
v.
Milton Eric DICKINSON and John L. McNemar, Jr.
No. 63141.
Supreme Court of Louisiana.
April 9, 1979.
*559 Emile M. Weber, Weber & Weber, Baton Rouge, for Milton Eric Dickinson.
D. Bert Garraway, Baton Rouge, for John L. McNemar, Jr.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for the State.
CALOGERO, Justice.[*]
Defendants, Milton Dickinson and John McNemar, were tried pursuant to a four count indictment charging them jointly with the attempted aggravated rapes and aggravated kidnappings of two young women. The jury found both defendants guilty as charged on all four counts. The court imposed on Dickinson consecutive life sentences for the aggravated kidnappings, and two forty year sentences for the attempted aggravated rapes, the two rape sentences to run concurrently with each other and with the first life sentence for aggravated kidnapping. McNemar was given life sentences for each of his aggravated kidnapping convictions and five year sentences for each of his attempted aggravated rape convictions, all four sentences imposed to run concurrently. In seeking reversal of his convictions and sentences, Dickinson argues to this Court seven of the twelve errors assigned in the lower court. In support of his appeal, McNemar urges seventeen of the twenty-three errors asserted on his behalf.
One of the more serious issues presented upon this appeal concerns the claim that the court erroneously allowed joint trial of the two counts charging the February, 1976, kidnapping-attempted rape of one woman with the two counts charging the same offenses against another woman in February, 1977 (Dickinson's assignment one, McNemar's assignments nine and seventeen). Two other serious issues are whether the court improperly restricted the defense's voir dire examination of the prospective jurors (Dickinson's assignment two, McNemar's assignments two and four) and whether the trial judge abused his discretion by denying a recess sought when a subpoenaed defense witness became ill and was unable to appear and testify (McNemar's assignment twenty-four).
Louisiana Code of Criminal Procedure article 493 governs joinder and provides:
"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial."
The record in this case amply establishes parallels between the two jointly tried criminal episodes sufficient to indicate that the transactions are strikingly similar. Therefore, the question of the propriety of joint trial of charges arising out of similar criminal transactions separated by a year chiefly resolves itself into an inquiry of whether the criminal transactions here are so separated by the passage of time that their character as crimes of the same modus operandi is impaired or destroyed.
Crimes exhibiting identical modus operandi may be tried simultaneously, even in the face of defense objection, when evidence thereof is mutually admissible as "other crimes" evidence, that is, when the *560 offenses are sufficiently similar, when they tend to be relevant to a genuine issue, and when the prejudicial effect of their admission does not outweigh the probative value. See State v. Carter, 352 So.2d 607 (La.1977). While it is true that this Court has often discussed modus operandi crimes in terms of the proximity in time of the offenses considered, there is no absolute requirement of close proximity and no compelling reason why lapse of time, in and of itself, should govern whether two or more crimes qualify as crimes exhibiting the same modus operandi for purposes of admissibility under R.S. 15:446. Crimes may properly be said to exhibit the same modus operandi when they are so distinctively similar as to virtually establish that their perpetrator was the same individual. See State v. Mitchell, 356 So.2d 974 (La.1978). Here, men fitting fairly distinctive physical descriptions abducted girls in substantially the same manner, took them to dwellings virtually certain to have been the same residence, and exhibited behavior and mannerisms astonishingly similar in many important respects. The lapse of time between the two criminal offenses does not arguably alter the near certainty of identity of assailants in these instances. Therefore, the two crimes exhibiting the same modus operandi would be mutually admissible in separate trials, provided each is relevant to prove a fact of consequence to each accuseds' guilt or innocence and, further, that the probative value of the "other crimes" evidence outweighs its prejudicial effect. See State v. Mitchell, supra at 979.
The distinct similarities between the criminal episodes bear heavily upon a seriously disputed issue, identity.[1] The introduction of "other crimes" evidence to prove the identity of the perpetrator of the crime being tried has been recognized as a legitimate exception to the general prohibition against the introduction of evidence of other criminal acts, provided the identity issue is actually disputed. See, e. g. State v. Sutfield, 354 So.2d 1334 (La.1978). Because there were alibi defenses presented by both accuseds, because one of the perpetrators (identified by each victim as McNemar) attempted to shield his identity during the commission of each offense, and because one of the victims had difficulty making a positive line-up identification of Dickinson (a year had passed since her abduction and Dickinson had gained weight), the state put the "other crimes" evidence to legitimate use in its efforts to prove each criminal episode. The virtually identical modus operandi lent support to the identifications of Dickinson and McNemar by the victims. Ability of both victims to positively identify Dickinson's apartment as the place of the sexual assaults further assured the defendants' convictions. In this case, the "other crimes" evidence had legitimate purpose and overriding probative value. Thus, the trial judge's denial of the severance sought was not error. These assignments lack merit.
During voir dire, by means of questions the trial judge deemed hypothetical, Dickinson's counsel asked whether, this being a rape case, prospective jurors would ". . . feel like he [defendant] ought to prove it a little bit stronger that it wasn't him" in a situation where the victim and the defendant would both take the stand. Because the inquiry assumed a situation where both victim and accused would testify, the query was ruled improperly hypothetical and defense was precluded from addressing it to other prospective jurors. Counsel for both defendants urge that the court erred when it foreclosed further use of the inquiry which was calculated to provide a basis for the intelligent exercise of the right to challenge for cause and the constitutionally guaranteed right of peremptory challenge.
It appears that the question defense sought to propound was not the kind of hypothetical question our jurisprudence prohibits. In State v. Clark, 325 So.2d 802 (La.1975), it is noted that questions which seek the prospective jurors' opinion concerning evidence to be presented at trial or *561 seek to obtain a pre-trial commitment on the issues based on facts which may be established at trial are not permitted. Such is not the nature of the question the defense here sought to ask. However, even error consisting of improper curtailment of the scope of the defense's voir dire examination in this particular case is not of reversible proportions since examination of the entire voir dire satisfies us that sufficiently wide latitude was afforded the defense in delving for answers which would bear upon the prospective jurors' ability to apply the presumption of innocence. See State v. Monroe, on rehearing, 329 So.2d 193 (La.1976). We thus conclude that both Dickinson's and McNemar's second assignments are without merit.
In his fourth assignment McNemar outlines another instance of curtailment of voir dire and argues that in connection therewith the court committed reversible error. During voir dire examination of a panel of prospective jurors, when McNemar's counsel was assertedly preparing to delve into an inquiry relating to a prospective juror's kinship with a law officer and the effect that relationship might have on the juror's ability to fairly judge he asked that juror, ". . . you heard the court talk about reasonable doubt. What does reasonable doubt constitute to you? Could you tell us in your own words what reasonable doubt is?" The judge disallowed that inquiry (because it sought to have a prospective juror define a legal principle, when the duty to instruct the jurors as to the law was his).
Regardless of the purpose of defense counsel's inquiry, whether he sought to discover bias flowing from this juror's association with police officers, from personal disagreement with the stringent burden placed upon the state to prove its case, or from some other source, it is clear that a criminal defendant ought to be allowed wide latitude in his attempts to discover jurors' subtle or subconscious attitudes by seeking responses which will reveal nuances felt to bear upon his impartiality and ability to accept the law as given to him. See State v. Hayes, 364 So.2d 923 (La.1978). Nevertheless, McNemar's counsel's straightforward question seeking to have the prospective juror say (albeit in his own words) what constitutes reasonable doubt is not the only way to exercise the right to inquire into a juror's subconscious inclinations or predispositions. Much like the inquiry in State v. Crochet, 354 So.2d 1288 (La.1978), where defense counsel attempted to have prospective jurors express their concept of reasonable doubt in terms of a percentage of proof, an answer to the inquiry had the potential of confusing or misleading those who ultimately would be responsible for trying the case, especially where (as here) the trial judge had not already instructed on reasonable doubt.[2]
Under these circumstances, and because the voir dire examination as a whole reveals that McNemar's counsel was permitted other inquiry in the area of the effect a relationship with a law officer might have on a juror's inclinations, we are not prepared to say that there existed curtailment which undermined the defendant's constitutional rights to voir dire and peremptory challenges. The circumstances of this case are distinguishable from those present in State v. Hayes, supra, where defense sought to explore the subtleties of the jurors' attitudes toward the presumption of innocence only after the judge had explained the legal meaning of the presumption and defense counsel had painstakingly reiterated the legal standard. Language set forth in our opinion in State v. Kelly, 367 So.2d 832 (La.1979) is applicable here: "No explanation of applicable legal principles was given this prospective juror prior to defense counsel's inquiry; at that point the prospective juror was uncounseled, and possibly even unaware of what her role as a juror would be." For the reasons stated, we determine that the assignment lacks merit.
*562 The final issue requiring separate treatment involves the trial judge's denial of a recess. A subpoenaed defense witness, Richard Beech, became ill and was unable to appear and testify. He had been present in court on a number of days prior to the time he was called to testify. When McNemar sought to produce the testimony he could not secure the witness' presence because Beech had been diagnosed as having measles and was quarantined in the parish jail. McNemar's counsel moved for a continuance, but the trial court declined to allow any delay in the trial.
Actually the delay McNemar's counsel sought is properly denominated a recess, it having been sought mid-trial.[3] This improper labelling in no way prejudices the defendant; we have considered such a mid-trial motion ". . . more properly a motion for a recess . . . which need not be in writing or comply with the formal requisites of a motion for a continuance. "State v. Mizell, 341 So.2d 385, 386 (La.1976).
Nevertheless, we conclude that the defendant McNemar was not prejudiced by the denial of the motion seeking recess until Beech could be present to testify. We conclude on the basis of the record that McNemar's attorney did not show an actual need for the presence of the witness. While arguing the motion counsel conceded that just the evening before he had notified the court that he no longer intended to call Beech to testify.[4] We are mindful that even when a pre-trial postponement is sought on the basis of the absence of a witness, the motion seeking the delay must not only state the facts to which that witness is expected to testify but show the testimony's materiality and the necessity for the presence of the witness at trial. C.Cr.P. art. 709.
Furthermore McNemar's counsel did not establish for the record that Beech's testimony would have materially supported the defense or undermined any element of the state's case. By Beech's testimony McNemar sought to show that Beech appeared in two line-ups with him and that in one of these identification procedures Beech was chosen by a woman who viewed the show-up; such testimony would be of little help when, as here, neither Beech nor McNemar were able to say that the line-up at which this identification of Beech took place was the one viewed by the two women who are the victims in this case. (Because of a cheesecloth-like drop or curtain which separated the stage on which the line-up participants stood from the audience section from whence victims and witnesses viewed those on stage, neither Beech nor McNemar could see the woman said to have identified Beech.) Accepting the showing of defendant McNemar that there were two line-ups in which both he and Beech participated, and in view of the unshaken testimony of the two victims in this case that they viewed only one line-up (which testimony was corroborated by the state's police officer witnesses who participated in the investigation of these crimes), it is not unreasonable to conclude (as even defense counsel apparently did when he decided to forego presenting Beech's testimony) that Beech's testimony would fall far short of establishing that the line-up about which Beech was to testify was that which was viewed by the victims in this case. Accordingly, the trial judge did not abuse the large discretion he has in ruling on a motion for recess. See State v. Charles, 350 So.2d 595 (La.1977). This assignment of error is without merit.
Other Assignments
The other assignments presented, which the court has determined are lacking serious *563 merit, are set forth briefly in the following discussions.
The defense claim that the court erred in denying a mistrial sought when the judge admonished counsel with a threat of contempt is without merit. Mistrial is a drastic remedy warranted only when error substantially prejudices the defendant. The record fails to demonstrate such prejudice flowing from the exchange between the court and counsel which culminated in the threat of sanction. (Dickinson's Assignment No. 3)
The court is asserted to have erred in denying the defense access to taped statements of the victims made prior to trial. A pre-trial conversation between the defense counsel and the district attorney was initially urged to have revealed discrepancies in descriptions of the perpetrators which alone would have cast doubt on the veracity of the victims' trial testimony. However, defense finally conceded that only the tape's contents would reveal whether there was in fact some exculpatory evidence. There was no showing that there were discrepancies such as would mandate the disclosure of the statements by the prosecution. This assignment is without merit. (Dickinson's Assignment No. 7)
The argument that other crimes evidence (evidence of a kidnapping of another woman, apparently not connected with the offenses which are the subject of this appeal) was improperly elicited by the state during cross-examination of Dickinson and during rebuttal is without merit. The evidence was introduced to impeach Dickinson's trial testimony bearing upon a seriously contested issue at trial. Its probative value outweighed its prejudicial effect because it could only properly be used for impeachment purposes and not as substantive evidence to prove the commission of the crime it admitted. In a case of this nature, where credibility is such a crucial issue (as it is conceived to be in most rape cases) and where impeachment is invited by testimony of the defendant, such highly relevant evidence is not erroneously admitted. (Dickinson's Assignments Nos. 10 and 11)
The jury instruction illustrating the legal concept of "anything of value" was not an impermissible comment on the facts of this case. Basing its instructions on the rationale and holding of State v. Felton, 339 So.2d 797 (La.1976) the court instructed that forcing sexual activity through threats for purposes of attaining sexual gratification satisfied the "anything of value" requirement which forms a part of the elements of the crime of aggravated kidnapping. By this instruction the court merely sought to comply with the requirement of Article 802 of the Code of Criminal Procedure that the judge charge the jury as to the law applicable to the case. (Dickinson's Assignment No. 12)
The defense claims that the court erred in granting the state's motion for continuance of McNemar's trial. It is urged that the delay in trial violated the constitutional right to a speedy trial. The court did not abuse its discretion in granting the continuance. The state's interest in continuing McNemar's trial in order that joint trial with Dickinson could be had was entirely legitimate. The delay is not shown to have improperly prejudiced McNemar. (McNemar's Assignments Nos. 1 and 5)
The court did not err in denying McNemar's challenge for cause of a prospective juror whose cousin had been a rape victim some years prior to the trial of this case. Taken as a whole the voir dire examination of the prospective juror amply supports the trial judge's conclusion that she could fairly and impartially serve, notwithstanding her relationship with one who had previously been a victim of the crime of rape. (McNemar's Assignment No. 7)
The trial court is asserted to have improperly admitted into evidence photographs of the apartment at which the rapes occurred. The photographs were relevant evidence in the case of the 1976 rape, notwithstanding they reflected changes in the apartment since the time of that rape (having been taken in 1977), because they corroborated portions of the first victim's *564 account of the crime. The admission of the photographs was not erroneous. (McNemar's Assignments Nos. 12, 13, 15 and 16)
McNemar's argument that the court erred in denying numerous motions for mistrial and severance, predicated on the frequent clashes which occurred between the court and counsel for co-defendant Dickinson, is without merit. Only if these exchanges deprived defendant of a fair trial would they warrant reversal. Our review of the exchanges reveals that they provide no basis for the drastic remedy of mistrial or for the severance sought. (McNemar's Assignments Nos. 3, 14, 18 and 19)
The defense claims that a mistrial and a severance he sought were warranted by Dickinson's counsel's reference to a search of McNemar's apartment. The argument is unavailing. The reference was not to another crime and there was no indication that any evidence was seized as a result of the search. Admonition, had it been sought, may have been in order but the argument that the remark entitled McNemar to a mistrial or a severance is without substantial merit. (McNemar's Assignment No. 20)

Decree
For all of the foregoing reasons, the convictions and sentences of the defendants, Milton Dickinson and John McNemar, are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[*] Judge Cecil C. Cutrer, Louisiana Court of Appeal, Third Circuit participated in this decision as an Associate Justice Ad Hoc.
[1] Dickinson and McNemar presented an alibi-type defense in connection with the charge of the 1977 abduction and assault. McNemar also presented an alibi defense for the 1976 incident. Thus, identity of the perpetrators became a distinct issue at trial.
[2] Interestingly, at another point in the voir dire examination, the defense recognized the prospective jurors' unfamiliarity with legal concepts (in this instance the presumption of innocence) and requested that the court instruct more fully on that difficult legal principle.
[3] Under the definitions set forth in Article 708 of the Code of Criminal Procedure "[a] continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced. A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced."
[4] Reminded by the court that he had communicated this change of plans at the close of trial the evening before, McNemar's counsel merely stated for the record that he had changed his mind.