345 So.2d 1 (1977)
STATE of Louisiana
v.
Rayfield HOFFMAN.
No. 58480.
Supreme Court of Louisiana.
February 28, 1977.
On Rehearing April 26, 1977.
Clyde D. Merritt, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Geraldine S. Veazey, Brian G. Meissner, Asst. Dist. Attys., for plaintiff-appellee.
DIXON, Justice.
On May 5, 1975 Rayfield Hoffman was found guilty by a jury of attempted aggravated rape. The crime occurred between 6:00 and 7:00 a.m. on December 25, 1974.
The victim lived alone in a one room apartment. She was in her bathrobe at about 6:00 o'clock in the morning when the defendant broke into her room and forced her to her bed. During the rape the defendant lost consciousness. The victim escaped to a nearby restaurant where she called the police. Upon their arrival, the police found the defendant asleep on the victim's bed, naked except for underwear shorts around his knees, and a hammer in the bed near his feet.
On this appeal defendant argues Assignments of Error Nos. 3, 4, 6, 7 and 8. The other assignments of error were neither briefed nor argued and are thereby considered abandoned. State v. Matthews, 292 So.2d 226 (La.1974); State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).

Assignment of Error No. 3
In this assignment defendant seems to argue that the names of the veniremen who were called on voir dire were not selected indiscriminately and by lot, and that C.Cr.P. 784 was violated. That article provides:

*2 "In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court."
The record before us does not reflect a violation of article 784, and does not make clear defendant's complaint. Defense counsel seemed to have attempted to bargain for a copy of information of the past performance of jurors which, defense counsel said, was in the hands of the prosecutor. The per curiam of the trial judge merely points out that the jury venire was selected a week before the trial, and that it is shared with other sections.
The State seems to indicate that State v. Bradford, 298 So.2d 781 (La.1974) approved the practice of which defendant seems to complain. Bradford made no such holding. If it were true that the names of the veniremen were not drawn from the petit jury venire list indiscriminately and by lot in open court, there would be a serious defect in the trial. However, the record before us does not reveal such a violation.
There is no merit to Assignment of Error No. 3.

Assignment of Error No. 4
While the jury was being selected, defendant moved as follows: "Under Art. 788, when the State and Defense accept a juror we ask that they be immediately sworn."
The trial court denied the motion and stated that all jurors would be sworn together before the trial began. Article 788 provides:
"After the examination provided by Article 786, a prospective juror shall be tendered first to the state, which shall accept or challenge him. If the state accepts the prospective juror, he shall be tendered to the defendant, who shall accept or challenge him. When a prospective juror is accepted by the state and the defendant, he shall be sworn immediately as a juror. This article is subject to the provisions of Articles 795 and 796."
Article 795 of the Code of Criminal Procedure provides that peremptory challenges may be made by the State at any time before the juror is accepted by the State, and by the defendant at any time before the juror is sworn.[1] Because of these provisions, a not unreasonable practice has developed on voir dire examination in which the State will "tentatively" accept a juror until after the panel has been completed, at which time the defense, with a full jury box before it, will exercise peremptory challenges. This procedure gives some latitude to the State, and is generally thought to give an advantage to the defendant, who need not exercise his peremptory challenges until after the State has accepted jurors.
Nevertheless, the practice is contrary to the provisions of C.Cr.P. 788. When requested by defense counsel, the trial judge must require that prospective jurors be tendered first to the State which shall accept or challenge, and then to the defendant, who must accept or challenge. The statutory system is a fair one, and, unless its provisions are waived by the parties, must be enforced.
However, defendant does not point to any prejudice he has suffered, nor to any advantage gained by the State from this error. Although there is obviously a violation of a statutory provision, the practice complained of has not affected the right of the accused to a fair and impartial trial, and is not a violation of a substantial right of the accused. Therefore, the assignment of error is not ground for reversal.

Assignments of Error Nos. 6 and 7
In Assignment of Error No. 6 the defendant complains that it was error for the court to provide the jury with a list of *3 responsive verdicts which included attempted aggravated rape and simple rape, because there was no evidence to support either verdict. Assignment of Error No. 7 complains of the denial of the defendant's motion for a new trial and in arrest of judgment because of a "total lack of evidence supporting the defendant's conviction."
In brief defendant seems to argue that the United States Supreme Court in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), disapproved Louisiana's responsive verdict system, which lacked standards to guide the jury in selecting the lesser included offenses of which they might find the defendant guilty. The defendant argues that, if the State's evidence is believed, it would support only a finding of aggravated rape; if the State's evidence is not believed (and the defendant testified that he had not raped the victim), the defendant must be found not guilty.
The trial judge had no alternative but to submit to the jury the list of responsive verdicts. The responsive verdicts fixed by statute (C.Cr.P. 814) for aggravated rape include attempted aggravated rape and simple rape. Roberts v. Louisiana found the death penalty in Louisiana unconstitutional, not the responsive verdict system.
It is true that there is an element of intellectual confusion in certain of the responsive verdicts. (For instance, manslaughter is a responsive verdict to first degree and second degree murder. See State v. Cooley, 260 La. 768, 257 So.2d 400 (1972).
Nevertheless, no constitutional bar has been suggested which would invalidate the responsive verdict system used in Louisiana. Since the trial judge was required by statute to submit the responsive verdicts to the jury, and was not prohibited by the Constitution, the defendant cannot complain, and there is no merit in his argument.
The argument in the motion for a new trial and the motion in arrest of judgment that there was no evidence of attempted aggravated rape is simply a play on words. There was not only an attempt; the attempt was successful. There was evidence of every element of aggravated rape, and the defendant cannot complain that the jury did not find him guilty of as severe a crime as they might have.

Assignment of Error No. 8
After conviction, the defendant was billed as a multiple offender, and was sentenced as a third offender to forty years at hard labor.
It is argued that the present policy of the district attorney's office in Orleans Parish is to employ the multiple offender procedure in every case in which the defendant has been previously convicted of a felony. In contrast, it is argued that it was not the policy during the administration of the district attorney's predecessor to employ the multiple offender procedure, and that, when the defendant pleaded guilty in 1968 and 1971 to charges of simple burglary and simple robbery, he was not informed that these sentences might subsequently be employed to enhance the penalty, in the event he should be convicted at a later time of another felony.
This argument is without substance. There is no requirement that a defendant must be informed of every possible consequence of his guilty plea before it can be considered knowingly and intelligently given. Defendant also complains that in 1971 he was charged with simple robbery and pleaded guilty to attempted simple robbery, without the bill of information having been amended. For this reason, since attempted simple robbery was not a responsive verdict, to a charge of simple robbery, there is a defect in the proceedings which invalidates the conviction and sentence for attempted simple robbery.
A similar agrument was answered in State v. Green, 263 La. 837, 269 So.2d 460 (1972), where the defendant, charged with armed robbery, pleaded guilty to attempted armed robbery without the bill of information having been amended. Attempted armed robbery is not a responsive verdict to *4 armed robbery. C.Cr.P. 814. C.Cr.P. 558 provides that with the consent of the district attorney, an accused may plead guilty "of a lesser offense that is included in the offense charged in the indictment." The procedure has been specifically approved by an amendment to C.Cr.P. 487 (Act 679 of 1970).
This contention is without merit.
Finally, the defense argues that the records in the cases charged in the habitual offender bill as prior felony convictions are silent as to whether defendant was represented by an attorney at the time of the sentence, and whether the defendant was advised of his rights under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), when he pleaded guilty. In Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 756 Fn. 6 (1970), the court stated that a guilty plea to a felony charge entered without counsel and without a waiver of counsel is invalid. In City of Monroe v. Fincher, 305 So.2d 108 (La.1974), this court applied Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and held that where the record of defendant's first DWI conviction does not establish that he had counsel or had made a waiver of counsel, the prior uncounseled DWI conviction may not be used to subject the defendant to prosecution and imprisonment as a repeat DWI offender. In the instant case, the State argues that the burden is upon the defendant to prove that the pleas were uncounseled or involuntary. However, it appears that under the Boykin rationale, the record must show that the pleas were counseled or waivers of counsel.
In the instant case, this court has not been provided with a transcript of the hearing on the multiple offender bill. Nor does the record contain the minutes of the prior guilty pleas.
The State merely argues that there was no evidence produced showing that the prior pleas of guilty were not voluntary or were not entered with the assistance of counsel.
The same argument was made in City of Monroe v. Coleman, 304 So.2d 332 (La.1974). The record must affirmatively show that the accused either was accompanied by counsel or that he was informed of his right to counsel and waived that right, and that the plea was knowingly and intelligently entered. See also State v. Guillotte, 297 So.2d 423 (La.1974); State v. Coody, 275 So.2d 773 (La.1973).
In the absence of such showing, such convictions cannot serve to enhance the penalty under the multiple offender statute.
For these reasons, the conviction is affirmed; the sentence is set aside; the case is remanded to the district court for sentencing consistent with the views here expressed and in accordance with law.

ON REHEARING
MARCUS, Justice.
Rayfield Hoffman was indicted by the grand jury for the Parish of Orleans for having committed aggravated rape in violation of La.R.S. 14:42. After trial by jury, defendant was found guilty of attempted aggravated rape. Subsequent to his conviction, the district attorney filed an information accusing defendant of being an habitual offender. After a hearing, the trial judge found defendant to be an habitual offender and sentenced him to serve forty years at hard labor. On appeal to this court, defendant's conviction was affirmed. However, his sentence was set aside and the case was remanded to the district court for resentencing due to the insufficiency of the record relative to the previous felony convictions upon which the habitual offender proceeding was based.[1] Upon application by defendant, we granted a rehearing to reconsider whether or not the jury panel which served in defendant's case was selected *5 in accordance with law. After rehearing, we have determined that we were in error in affirming defendant's conviction.
On original hearing, defendant urged as Assignment of Error No. 3 the failure of the trial judge to select a jury panel ". . indiscriminately and by lot in open court. . ." as directed by La.Code Crim.P. art. 784. Defendant claimed that the trial judge called the prospective jurors for voir dire examination in the order in which their names appeared on a jury panel sheet comprised of fifty names which had been compiled and furnished by the Jury Commission. Defendant timely objected to the alleged procedure before the first prospective juror was called for voir dire examination. Moreover, he made his objection general as to each juror selected and sworn. Nevertheless, we were unable to find merit in defendant's argument on original hearing because the record before us at that time did not demonstrate that the jury panel was in fact selected in the manner represented by defendant. We noted, however, that if defendant's claims were true, "there would be a serious defect in the trial."
On rehearing, the record has been supplemented at our request and it now substantiates defendant's contention that the jury panel was not selected in accordance with law.
La.Code Crim.P. art. 784 directs:
In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court. (Emphasis added.)
In order to facilitate the administration of criminal justice in Orleans Parish, the Louisiana Legislature in 1972 passed Act No. 41 which authorizes the creation and operation of a central jury pool for the Criminal District Court for the Parish of Orleans. Act No. 41, now codified as La.Code Crim.P. art. 409.1, provides as follows:
A. There is hereby created a central jury pool for the Criminal District Court for the Parish of Orleans which shall be administered by the Jury Commission of the Parish of Orleans as hereinafter provided.
B. In order to properly and adequately administer and operate the central jury pool for the Criminal District Court for the Parish of Orleans, the chairman of the Jury Commissioners for the Parish of Orleans shall designate two jury commissioners each month who shall be specifically charged with the responsibility for administering and operating the central jury pool. The chairman of the jury commissioners shall rotate the responsibility for the administration and operation of the central jury pool amongst the other four jury commissioners so that no jury commissioner shall be assigned to the central jury pool for more than six months out of every twelve months.
C. The Criminal District Court for the Parish of Orleans acting en banc shall by majority vote determine the number of jurors to serve in the central jury pool in any given month, the jury days for that month, and all other matters relative to the operating procedures of the central jury pool.
D. The jury commission shall select the number of jurors to serve in the central jury pool as hereinabove determined by the criminal district court acting en banc and by the method now prescribed by law.
E. The provisions of this Act shall be cumulative of and in addition to the method now prescribed by law for the selection of a jury panel for the Criminal District Court for the Parish of Orleans except that those provisions in conflict with this Act are hereby repealed and declared invalid insofar as they apply to the Criminal District Court for the Parish of Orleans. (Emphasis added.)
La.Code Crim.P. art. 409.1(C) permits the judges of the Criminal District Court for the Parish of Orleans acting en banc by majority vote to pass rules governing the composition of the central jury pool, as well as all matters relative to the operation of the jury pool. In our view, this article includes authority for the judges to adopt a *6 procedure for compilation of a list of as many names from the central jury pool as are requested by the trial judge, from which list a jury panel would ultimately be selected.[2] La.Code Crim.P. art. 409.1 does not, however, address itself to the proper method for selection of a jury panel. The article directs that the provisions of the act (central jury pool) "shall be cumulative of and in addition to the method now prescribed by law for the selection of a jury panel . . .." (Emphasis added.) It further provides that the jury panel selection provisions in conflict with La.Code Crim.P. art. 409.1 are repealed and invalid insofar as they apply to the Criminal District Court for the Parish of Orleans. Except for the fact that a jury panel in Orleans Parish may now be selected from a central jury pool rather than from the petit jury venire as is the practice in most other parishes in the state,[3] we perceive no conflict between the provisions of La.Code Crim.P. arts. 409.1 and 784. Hence, we conclude that the mandates of La.Code Crim.P. art. 784 are equally applicable whether the jury panel is selected from a petit jury venire or from a central jury pool. In either situation, La.Code Crim.P. art. 784 prescribes that the jury panel "shall be drawn . . . indiscriminately and by lot in open court . . .."
In the instant case, the jury panel was not selected in compliance with La.Code Crim.P. art. 784. Prospective jurors were called by the trial judge in the order that their names appeared on the jury panel sheet compiled by the Jury Commission. Clearly, the panel was not drawn indiscriminately and by lot in open court as mandated by law. Hence, defendant's objection is well founded and we conclude that his conviction and sentence must be reversed. We cannot say, however, that the violation complained of herein is one which affects the determination of guilt or innocence in this case. Accordingly, having authoritatively construed and reconciled La.Code Crim.P. arts. 409.1 and 784 for the first time and contrary to the prior construction placed on these articles by a majority of the judges of the Criminal District Court for the Parish of Orleans, we have determined that the interests of the administration of justice would best be served by giving this decision prospective application only to those cases wherein a jury panel is selected after this opinion becomes final except those cases which have already been submitted to this court for decision.

DECREE
For the reasons assigned, our original decree is vacated and set aside; defendant's conviction and sentence are reversed and the case is remanded to district court for a new trial in accordance with the views herein expressed.
DIXON, J., concurs, being of the opinion that the rule of this case should be effective at the latest on the day after this opinion is handed down.
CALOGERO, J., concurs.
NOTES
[1] C.Cr.P. 796 provides:

"If it is discovered after a juror has been accepted and sworn, that he is incompetent to serve, the court may, at any time before the first witness is sworn, order the juror removed and the panel completed in the ordinary course."
[1] The record did not establish that defendant either had counsel or waived counsel prior to pleading guilty to the felonies which formed the basis of defendant's sentencing as a multiple offender.
[2] In the instant case, a list containing the names of fifty prospective jurors in numerical order was supplied to the trial judge. Opposite each name is a number that corresponds to the same name and number on another list of 355 names. This latter list is presumably the central jury pool. Other than this, nothing more is in the record relative to the procedure followed by the Jury Commission in reaching the point where the list of fifty prospective jurors were supplied to the trial judge for selection of the jury panel. Defendant does not dispute any aspect of the procedure relative to the selection of the central jury pool or the list of fifty names supplied to the trial judge. Accordingly, we do not pass upon same. Defendant's only contention is directed at the manner in which the jury panel was selected by the trial judge from the list of fifty names. Hence, it is only to this issue that this opinion is directed.
[3] La.Code Crim.P. art. 409.2 authorizes a similar central jury pool for the Twenty-Fourth Judicial District Court for the Parish of Jefferson.