355 So.2d 1299 (1978)
STATE of Louisiana
v.
Maurice GIBBS.
No. 60769.
Supreme Court of Louisiana.
March 6, 1978.
Clyde D. Merritt, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Henry P. Julien, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Maurice Gibbs was indicted for the second degree murder of Russell Taylor in violation of R.S. 14:30.1. A jury of twelve returned a verdict of guilty as charged on September 8, 1976. Defendant was later sentenced to life imprisonment at hard labor. On appeal defendant relies upon six assignments of error for reversal of his conviction and sentence. Finding no merit to these assignments, we affirm.
An eyewitness testified that she heard voices in front of her house about noon and went to the door to see who it was. There she saw defendant arguing with the decedent. She went back inside her house, but returned about five minutes later, in time to see defendant shoot decedent in the head repeatedly.

Assignment of Error No. 3
In this assignment defendant contends the trial judge improperly limited his cross-examination of the State's principal witness, Bernita Holmes.
Ms. Holmes identified the perpetrator, whom she called "Reesey," as the defendant, a man she had known for about twenty-five years.
On cross-examination, defense counsel questioned the witness in an attempt to discredit the identification:
"Q Now, you say that you know "Reesey" all of your live (sic)?

*1300 A Uh huh.
Q Where did you livewhere did he live on (sic) August of 1971?
A I don't know. I stays to myself where I stays.
Q You know him for how many years then?
A About 25 years.
Q How old are you now?
A 25.
Q So, you knew him from the day that you were born?
A No, not really.
Q So, you don't know him for 25 years, is that right?
A Well, I know him long enough. I know his face.
Q When is it that you think that you first met "Reesey"?
A I don't remember.
Q Where did he live when you first met him?
A I don't know.
Q What school was he going to when you first met him?
A Danneel, I think.
Q Danneel, and what year was that?
A I don't remember.
Q Well, was it in 19. . .
A I don't remember.
Q Did you go to any other schools with him?
A No.
Q That is the only school?
A Right.
Q And, what grade were you in Danneel?
A I went to kindergarten to sixth grade.
Q All right. And, what year did you start kindergarten?
A I don't remember that either.
Q What year did you start school?
A I don't remember that either.
Q How old were you when you started school?
A Five, I guess.
Q You don't know that. What year were you born in?
A '51.
Q So, then you would have started school in 1956?
A If you say so.
Q When did you first start going to school with Maurice Gibbs?
A I don't remember.
Q And, you stayed in school until how long the sixth grade?
A Uh huh.
Q Did you pass each year?
A No.
Q Well, how many times were you held back?
BY MR. MESSINA: [Assistant District Attorney]
Your Honor, I am going to object to this. I think that this is totally irrevevant (sic).
BY THE COURT:
Objection sustained.
BY MR. MERRITT: [Defense Attorney] Please note an exception, Your Honor. The crux of this matter is that she doesn't know Maurice Gibbs. We are trying to attempt to show that she doesn't. Do you wish to reconsider your ruling, Your Honor?
BY THE COURT:
No. Objection sustained.
BY MR. MERRITT:
Q Did you finish school in 1957 then?
A No.
Q Did you leave Danneel School in 1958?
BY MR. MESSINA:
Your Honor, I am going to object again, Your Honor, for the same reasonthe relevancy of all of this.
BY THE COURT:
Mr. Merritt, approach the bench.
BY THE COURT:
Everyone just remain where you are.
* * * * * *
BY THE COURT:
Let the record reflect that we areand the defendant are in chambers.
BY MR. MESSINA:
I object to the line of questions about the school. I think that it is all irrelevant to this case.

*1301 BY THE COURT:
The witness has made some indications that she knew him for a number of years. She mentioned 25 years and upon further questioning shethe defense attorney made some comment as to the fact that she knew him the first day that she was born. I think the whole line of questioning has gotten down to a point about when she finished school and it is becoming very antagonistic. That has very little to do with this as far as the question at issue. Make your objection.
BY MR. MERRITT:
I would like to note an exception to the Court's ruling, Your Honor."
When the trial resumed, defense counsel continued to question the witness as to when and under that circumstances she had seen the defendant over the past several years. Although receiving vague responses to these questions, the defense attorney abandoned that line of questioning and concentrated on ascertaining what Ms. Holmes had seen at the time of the shooting. The nature and extent of Ms. Holmes' familiarity with the defendant was never established.
R.S. 15:275 provides:
"In the discipline of his court, the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel."
Further, R.S. 15:494 provides: "It is not competent to impeach a witness as to collateral facts or irrelevant matter." Counsel was permitted to show that the witness only went to the sixth grade when she attended the same school the defendant had attended. He was not permitted to show the number of times she was "held back," nor when the witness "finished" school. The only possible relevance we can discern in the line of questioning which was terminated by the trial judge was a possible defect in the capacity of the witness to observe and relate facts. (Impeachment, 21 Loyola L.Rev. 346, 352 (1975)). A defect in the capacity of the witness is neither argued nor suggested in brief, and we find no error in the action of the trial court in sustaining the objection to the cross-examination on collateral facts and irrelevant matters.

Assignments of Error Nos. 6, 7 and 8
Three assignments are submitted complaining of the charge to the jury. However, the record does not conform to the objections argued in brief. The record seems not to contain a verbatim transcript of the charge as given, but includes copies of pages from the judge's notebook of charges, and some of defendant's requested charges, which bear notations indicating that some of the requested charges were given. For instance, the notation on defendant's requested charge # 6 (the entire article 804 of the Code of Criminal Procedure) is: "Granted Para # 2 read."
One of the charges to which defendant objected is patently erroneous and should not be given.[1] However, defendant did not complain of the erroneous part of the instruction, *1302 but only of the omission from the instruction that the jury could not go outside the evidence to convict. A reading of the charge as a whole discloses that the matter was adequately covered, and that there was no merit in this objection.
Finally, the requested charge as to identification evidence was not wholly correct and was adequately covered by the charge given.
These assignments are without merit.

Other Assignments of Error
The remaining assignments are insubstantial.
No. 1Defendant does not show or even allege that a particular class of people has been discriminated against in the selection of the petit jury venire. State v. Daigle, 344 So.2d 1380 (La.1977). Therefore, we cannot say that use of voter registration lists and lists of volunteers as the sole source denied defendant a right to a jury of a cross section of the community.
No. 2We have previously determined that C.Cr.P. 784 is applicable to the criminal courts in Orleans Parish, State v. Hoffman, 345 So.2d 1 (La.1977), and thus there was error in calling prospective jurors in the order their names appeared on a list submitted by the jury commissioner rather than by lot in open court. However, in Hoffman we ruled that our construction and reconciliation of C.Cr.P. 409.1 and 784 would only have prospective application to cases in which a jury panel was selected after Hoffman became final (April 26, 1977) except for cases that had been submitted to this court for decision by April 26, 1977 (this appeal was lodged in October, 1977). Therefore, Hoffman has no application to the instant case.
For the reasons assigned, defendant's conviction and sentence are affirmed.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., concur.
NOTES
[1] The plain reference from the instruction is that the jury is limited to evidence before it to support a reasonable doubt. Reasonable doubt may be based on the lack of evidence in the case. C.Cr.P. 804, subd. A(2). The jury was instructed as follows:

"You are prohibited by law and your oath from going beyond the evidence to seek for doubts upon which to acquit the defendant, but must confine yourselves strictly to a dispassionate consideration of the testimony given upon the trial. You must not resort to extraneous facts or circumstances in reaching your verdict. That is, you must not go beyond the evidence to find facts or circumstances creating doubts, but must restrict yourselves to the evidence that you heard on the trial of this case."
The jury is entitled to acquit because it disbelieves witnesses, because it is not convinced beyond a reasonable doubt, because of a lack of evidence as to an essential element of the crime, etc. The jury is not restricted to the evidence adduced from the witness stand for the creation of a reasonable doubt.
We do not understand the holding in State v. Ferguson, 240 La. 593, 124 So.2d 558 (1960), in which a part of the charge given was similar to the one under consideration, to be to the contrary.