367 So.2d 789 (1979)
STATE of Louisiana
v.
Lionel MUSE.
No. 62930.
Supreme Court of Louisiana.
January 29, 1979.
*790 Alton T. Moran, Director, Allen J. Bergeron, Jr., App. Counsel, M. Olive Pierson, Trial Counsel, J. Arthur Smith, III, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Mary V. Gilliland, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Chief Justice.[*]
Lionel Muse was charged by bill of information with the August 29, 1976 simple burglary of a structure belonging to Dr. Robert L. Elliott known as Breast Clinic on Convention Street in the city of Baton Rouge. La.Rev.Stat. 14:62 (1972). He pled guilty to the charges on January 10, 1977. The trial judge ordered a presentence investigation and deferred sentencing pending receipt of the report.
The sentencing scheduled for October 31, 1977 was deferred because the presentence report had not been received. Accordingly, the trial judge ex proprio motu ordered that the accused, his counsel, the District Attorney, the Sheriff, and the Probation and Parole Division of the Department of Corrections be notified that sentence would be imposed on December 2, 1977. On December 2, 1977, because the accused had not been returned from the penitentiary sentencing was again deferred until January 13, 1978. Although the record is silent on the subject, all parties evidently agreed to defer the matter until January 20, 1978.
On January 20, 1978, with the accused present in court and represented by counsel, the District Attorney filed a bill of information charging defendant as an habitual offender. The allegations of the charge were denied by defendant. Sentence was again deferred on the guilty plea of January 10, 1977 pending a hearing under the Habitual Offender Law, which was assigned for March 21, 1978.
At the hearing, as scheduled, counsel for the accused filed a motion to quash the bill of information charging defendant as a multiple offender. The motion was based on the allegation that the multiple offender bill was not timely, and defendant was thereby deprived of the right to a speedy *791 trial and the right to be sentenced without unreasonable delay as guaranteed by Article 874 of the Code of Criminal Procedure. The motion also alleged that defendant's January 10, 1977 guilty plea could not be used to enhance his punishment because defendant was not advised prior to his guilty plea that an enhanced penalty could possibly result from that plea. If he had known this, it is alleged, he would not have entered a guilty plea.
The motion to quash was denied, the hearing was held and the trial judge found defendant to be a second felony offender. Defendant was therefore sentenced to imprisonment at hard labor for eighteen years.
Assignment 1: Louisiana's Habitual Offender Law permits the District Attorney to file an habitual offender charge "at any time, either after conviction or sentence." La.Rev.Stat. 15:529.1D. The open-ended "at any time" latitude granted for filing habitual offender charges is tempered in this case by our decision in State ex rel. Williams v. Henderson, 289 So.2d 74 (La.1974), where we held that the Habitual Offender Law did not permit an indefinite lapse of time for institution of a proceeding for enhancement of penalty. The holding there was that the proceeding after completion of the term of incarceration was unduly delayed, and the enhanced penalty imposed was vacated.
In State v. McQueen, 308 So.2d 752 (La.1975), we held that an unexplained delay of three years, eight months, in filing a charge to enhance penalty was unreasonable. Our decision in that case recognized the rationale that the enhancement of penalty under the Habitual Offender Law was not a trial on guilt or innocence but was in fact a sentencing procedure which permits enhancement of punishment for recidivist offenders. State v. Rowell, 306 So.2d 668 (La.1975). As such, the Court rationalized, the procedure is subject to the prompt sentence requirement in Article 874 of the Code of Criminal Procedure that "Sentence shall be imposed without unreasonable delay. If a defendant claims that the sentence has been unreasonably delayed, he may invoke the supervisory jurisdiction of the supreme court."
In essence, therefore, the question for decision here is whether the sentence, imposed nineteen months after conviction, was imposed "without unreasonable delay."
Initially it is observed that at no time during the delay from the time of the guilty plea to the enhanced penalty proceeding did defendant avail himself of the right granted by Article 874 to "invoke the supervisory jurisdiction of the supreme court." In order to expedite the sentencing.
Although the record is otherwise silent on the question, it does reflect that the trial judge who received the guilty plea ordered a presentence report. Some permissible delay was undoubtedly attributable to the need to await that report. During this delay defendant had been returned to the penitentiary because of a revocation of parole in connection with another conviction. Sentencing, which had been first scheduled for October 31, 1977, was postponed because the presentence report had not been received. On December 2, 1977 sentencing was again deferred because defendant had not yet been returned from Angola, a delay which it may be inferred was not due to any neglect on the part of the judge or prosecutor.
It should be recalled that defendant did receive a speedy trialwithin less than five months of the offense, which, when added to the delay for sentencing, constitutes an overall delay of less than twenty months. This delay is well within the two-year delay allowed by the Code of Criminal Procedure in this felony case for commencement of trial after institution of the prosecution. La.Code Crim.Pro. art. 578(2). The delay in the instant case is likewise well within the six-year limitation provided by the Code for the institution of prosecution in such a felony case. La.Code Crim.Pro. art. 572.
Considering the facts and circumstances of this case the delay involved is not unreasonable.
*792 The other issue raised by the motion to quash consists of the allegation that the failure to inform defendant at the guilty plea that his conviction in the instant case could possibly result in a subsequent charge for enhancement of penalty.
The fundamental proposition involved arises from the decision of the United States Supreme Court in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, where the Court held that because several constitutional rights are waived when a guilty plea is entered, due process requires that it be affirmatively shown by the record that the plea was intelligently and voluntarily entered.
"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." 395 U.S. at page 243, 89 S.Ct. at page 1712.
In a colloquy transcribed into 22 pages in this record the trial judge meticulously and laboriously instructed and advised the defendant of the rights he was waiving by his guilty plea. He assured himself by interrogating the defendant that defendant understood those rights and waived them freely and voluntarily. In every respect the Boykin rule was adhered to.
Recent cases in this Court, fully cognizant of the Boykin rule, have held that defendant need not be informed when he enters a guilty plea that it may serve as a basis for an enhanced sentence on a future conviction. One example is State v. Jackson, 362 So.2d 1082 (La.1978), where this Court held:
"[N]o authority has been cited which required the trial judge to advise Jackson [the defendant] that the conviction resulting from a guilty plea could be used in a future multiple offender charge.
"Courts have held that failure to advise of collateral, but foreseeable, adverse consequences of a guilty plea does not permit the withdrawal of the guilty plea. Nor is the trial judge required to anticipate all of the peripheral consequences which may affect the defendant in the future as a result of a guilty plea." Authorities omitted. See also State v. Lewis, 366 So.2d 1355 (La.1978); State v. Hoffman, 345 So.2d 1 (La.1977).
Assignment 2: Defendant urges on appeal that the trial judge committed error when he admitted into evidence at the habitual offender hearing uncertified documents purporting to represent a commitment of defendant as a felon. It is claimed that such a ruling is contrary to Section 529.1 F of Title 15 of the Revised Statutes, which provides:
"The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the finger prints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence on the trial of any person for a second and subsequent offense of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate."
Aside from evidence offered at the habitual offender hearing, reference to the transcript of the guilty plea examination on January 10, 1977 makes it abundantly clear that defendant was a recidivist offender and had been convicted of a prior felony. At the time of this examination he testified that he was incarcerated in the parish jail for the offense in this case and could not be admitted to bail because he was then a parole violator for an offense for which he had been imprisoned in the state penitentiary. He testified that at that time he owed time on a six-year sentence for a conviction on a two-count charge of simple robbery in *793 the parish of Orleans, having pled guilty to those charges.
At the habitual offender hearing Scott Tycer, records custodian at the Louisiana State Penitentiary, testified for the State. He said that he had "the most recent file" on defendant Muse. He testified that Muse had been received at the penitentiary as a parole violator, parole having been granted under a sentence arising out of a conviction on two counts of simple robbery. He then produced what he designated as a "commitment paper", together with other documents which were part of the penitentiary records received from the Clerk's Office of the Criminal District Court in Orleans Parish.
The documents consisted of the commitment, a copy of the indictment and/or information under which Muse was convicted, a copy of the sentence as recorded in the minutes of court, and the name and address of the judge, and the District Attorney who participated in the trial.
When the prosecutor offered the documents in evidence, defense counsel objected to the introduction of the commitment on the ground that it was not certified. He also objected to the bill of information because the habitual offender charge alleged a conviction on June 11, 1971, whereas an attestation on the bill of information that it was a true copy was dated June 25, 1971. Both objections were overruled.
The commitment was not certified. However, the records custodian of the penitentiary testified that the commitment was a record of the penitentiary and it had been received from the court in Orleans Parish in which defendant was convicted. In our view that testimony bears considerable weight and validity, comparable to a certificate of the "superintendent or other chief officer of any penitentiary of this state," although it is not "prima facie" proof.
The quoted statute relied upon by the defense, which states that certified documents are prima facie evidence, does not purport to confine the scope of proof of offenses to that evidence. All other legitimate evidence may be used to support the necessary proof of other felony convictions.
In State v. Hamilton, 356 So.2d 1360 (La.1978), we stated that the statute is not the exclusive method of proving that defendant is a habitual offender, relying upon our decisions in State v. Barrow, 352 So.2d 635 (La.1977); State v. Jones, 332 So.2d 461 (La.1976); State v. Montana, 332 So.2d 248 (La.1976).
In addition to the documents to which defendant objected, the State also offered a certified record and fingerprint card from the Louisiana State Police Criminal Records Unit. An employee of that unit, a fingerprint technician, fingerprinted defendant at the hearing and testified that he was the same Lionel Muse who had two prior convictions, according to the rap sheets in the records of her office and the fingerprint card containing an original of Muse's fingerprints. On this record, therefore, there is adequate proof of defendant's prior convictions.
As to the claim that the copy of the bill of information was inadmissible because the attestation thereon did not agree with the date of conviction on the habitual offender charge, that contention is also without merit. The back of the bill of information contains a summary of the guilty plea showing that it was made on June 11, 1971the same date shown on the charge. The fact that the attestation was made later on June 25, 1971 has no bearing on the date of conviction.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., dissents and assigns reasons.
DENNIS, J., dissents. Evidence essential to the defendant's adjudication as a habitual offender was unlawfully admitted. See State v. Martin, La., 356 So.2d 1370 (1978); State v. Tillman, La., 356 So.2d 1376 (1978).
TATE, Justice, dissenting.
I respectfully dissent. In my view, the two contentions raised by the defendant's appeal are both meritorious:
*794 I. By his motion to quash the bill of information charging him as a multiple offender, the defendant argues that the bill, filed more than a year after his guilty plea, was not timely, and thus violates his right under La.C.Cr.P. art. 874 to be sentenced without unreasonable delay, and his right to a speedy trial guaranteed by the United States Constitution, Amendment VI, and the Louisiana Constitution of 1974, Article I, Section 16.
II. Alternatively, the defendant contends that the filing of the multiple bill "eviscerated" the effectiveness of his guilty plea because at the time the plea was entered he was not informed that he could be sentenced to a term greater than is provided in the simple burglary statute. Accordingly, he contends that his plea was not voluntary and intelligent in accordance with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1968).

I.
Recently, in State v. Johnson, 363 So.2d 458 (La.1978), this court found that the right to be speedily sentenced is not guaranteed by the Sixth Amendment and Article I, Section 16 of the Louisiana Constitution of 1974. In Johnson, defendant was not sentenced until seven years after his conviction because he escaped and was arrested, convicted, and sentenced in Michigan before being paroled after seven years, when he was returned to Louisiana.
However, the Johnson situation is distinguishable: it concerned a delay in sentencing, whereas the instant case involves a prolonged delay in instituting multiple-offender proceedings.
Before the state can attempt to have defendant sentenced as a multiple offender, it must file an additional bill of information against defendant and prove that defendant was the person who committed the prior crimes alleged in the multiple bill. Thus, sentencing as a multiple offender, unlike ordinary sentencing, requires a separate trial to determine whether defendant should be sentenced as a multiple offender. Therefore, at least one of the considerations underlying the speedy trial right, minimization of anxiety and concern accompanying public accusation (as a multiple offender), is present. See Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
We have repeatedly held that the state must file an habitual offender bill within a reasonable time after the prosecutor knows the defendant has a prior felony record. State v. Wilson, 360 So.2d 166 (La.1978); State v. Bell, 324 So.2d 451 (La.1975); State v. McQueen, 308 So.2d 752 (La.1975); State ex rel. Williams v. Henderson, 289 So.2d 74 (La.1974). In McQueen, Bell, and Williams, we noted that the state and federal constitutional rights to a speedy trial require prompt submission of a multiple bill, if it is to be submitted at all.
In Williams, we explained, 289 So.2d 77: "A case must end at some point. Even persons who have been convicted of two or more felonies must be assured, after some passage of time, that the consequences of past criminal acts have abated . . .
"A defendant has a right to a speedy trial. La.Const. Art. 1, § 9 (1921) [Art. 1, § 16 (1974)]; Sixth Amendment, U.S.Const. The same considerations which underly this constitutional mandate compel a conclusion that upon conviction a defendant is entitled to know the full consequences of the verdict within a reasonable time. Since the enhancement-of-penalty provision is incidental to the latest conviction, the proceeding to sentence under that provision should not be unduly delayed. Cf. C.Cr.P. 874 * * *"
The record indicates that the multiple offender bill in this case was filed on January 20, 1978, a year and ten days after defendant entered his guilty plea. Although sentencing was first set for October 31, 1977, it was postponed because the trial court had not yet received the pre-sentencing report, ordered January 10, 1977, the day defendant's plea was entered. On December 2, 1977, sentencing was again deferred because the defendant had not yet *795 been returned from Angola.[1] Nevertheless, the state was aware of defendant's prior convictions on the date the guilty plea was entered, as defendant informed the trial court (with an assistant district attorney present representing the state) of his prior convictions when he was questioned prior to the court's acceptance of his guilty plea. The state offers no explanation for the delay in filing the bill.
As we noted earlier, time for filing a multiple offender bill begins to run when the state is informed of defendant's prior convictions. State v. Bell, supra; State v. McQueen, supra.
The date of sentencing, delayed twice for cause in this matter, has no bearing on the timeliness of the multiple offender bill. Hence, the failure of the state to file the bill for over a year may be unreasonable, even though a sentencing delay for the same period of time may be justified.
The delay in the present action was unreasonable. The state's failure to timely file the bill denied him his right to know, within a reasonable time, that his prior offenses would be used to enhance his sentence. Also, since the state had notice of the prior convictions at the time the guilty plea was entered, it could easily have filed the bill shortly thereafter. The unexplained nature of the delay further indicates that no justifiable reason existed for not filing the bill earlier.

II.
If we do not quash the enhanced punishment accorded the defendant, then at the least his plea of guilty to the offense should be set aside. At the Boykin examination prior to entering the plea, he was informed that the sentence he could receive was nine years, whereas actually he received an 18-year sentence due to the enhanced punishment.
Recent cases decided by this court have held that defendant need not be informed when he enters a guilty plea that it may later serve as the basis of an enhanced sentence on a future conviction. State v. Jackson, 362 So.2d 1082 (La.1978); State v. Hoffman, 345 So.2d 1 (La.1977).
The defendant notes in his brief that in accordance with the Federal Rules of Criminal Procedure, Rule 11, Federal courts must inform a defendant of the maximum and minimum penalties before excepting the plea or the plea may be nullified. McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). At least one federal court has held that the Rule 11 requirement is not constitutionally based. See Kelleher v. Henderson, 531 F.2d 78 (2d Cir., 1976). The Second Circuit, however inferred, in that case, that where defendant is misinformed as to the maximum sentence, and where he may not have entered a guilty plea had he known the maximum sentence, a constitutional question may be raised, as the plea may not have been intelligently entered. 531 F.2d at 81-82.
Additionally, the American Bar Association for Criminal Justice Standard 1.4[c][ii] (1968), recommends that a court should not accept a guilty plea without informing the accused of any mandatory minimum sentence and the possibility of enhanced punishment. See also James E. Bond, Plea Bargaining and Guilty Pleas, (1978), Section 3.39: "There is nearly universal agreement that the defendant must know the minimum and maximum sentence that the judge may impose."
Finally, as noted by defendant, some state courts have held that information regarding maximum sentence is required to be disclosed to defendant by the Boykin decision. See Carter v. State, 291 Ala. 83, 277 So.2d 896 (1973); People v. Troyan, 21 Ill.App.3d 375, 315 N.E.2d 335 (1974); White v. State, 222 Kan. 709, 568 P.2d 112 (1977); Fletcher v. Cupp, 1 Or.App. 467, 463 P.2d 365 (1969). See also concurring opinion in People v. Mauch, 397 Mich. 646, 247 N.W.2d 5 (1976).
*796 Nevertheless, while Boykin may not require the trial judge always to advise defendant of the maximum sentence before excepting a guilty plea, the facts of this case require that this plea be nullified if the state's multiple bill is allowed to stand: When the defendant entered his plea, he was misinformed as to the maximum sentence he could receive.
The transcript indicates that defendant was under the impression that the most serious consequence of his plea would be nine years imprisonment:
THE COURT: You understand that your exposure sentence wise is nine years at hard labor and that phrase at hard labor means necessarily to the Department of Corrections and of course the Department of Corrections administers all the state penal institutions as distinguished from the parish jail.
The trial court thus (no doubt unintentionally) reinforced defendant's prior understanding of his maximum sentence, despite the court's knowledge of the prior convictions. Consequently, the defendant's guilty plea was not intelligent, since it was accepted under the misapprehension that it could only result in the nine year sentence.
No doubt, the defendant's trial attorney should have informed him of the possibility of being billed as a multiple offender. Nevertheless, counsel's failure to do so does not moot the issue. Our constitutions and the jurisprudence place an affirmative duty on the trial court to make sure that a guilty plea is voluntarily and intelligently entered.
Accordingly, the plea of guilty must be set aside if we do not quash the enhanced punishment proceeding.
NOTES
[*] Chief Judge L. Julien Samuel participated in this decision as Associate Justice Ad Hoc, sitting in the place of Chief Justice Sanders, retired.
[1] Defendant was apparently sent to Angola prior to sentencing in this matter because his conviction on this charge constituted a violation of his parole agreement from a prior conviction.