832 So.2d 995 (2002)
STATE of Louisiana
v.
Lionel TAPPS.
No. 02-KA-0547.
Court of Appeal of Louisiana, Fifth Circuit.
October 29, 2002.
*997 Phillip E. O'Neill, Gretna, LA, for Lionel Tapps, Defendant-Appellant.
Paul D. Connick, Jr., District Attorney, Twenty Fourth Judicial District Court, Parish of Jefferson, Terry M. Boudreaux, Andrea F. Long, Assistant District AttorneysAppellate Counsel, Louis Butler, Assistant District AttorneyTrial Counsel, Gretna, LA, for State of Louisiana, Plaintiff-Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
On August 27, 2000, the Jefferson Parish District Attorney filed a bill of information charging defendant, Lionel Tapps, with forcible rape of a juvenile and one count of second degree kidnapping of a juvenile. On September 28, 2000, he was arraigned and pled not guilty.
After trial, which was held on June 26 and June 27, 2001, the 12-member jury *998 found defendant guilty of forcible rape and the responsive verdict of simple kidnapping. On July 3, 2001, defendant filed a Motion for New Trial. On July 11, 2001, he filed a Motion for Post Verdict Judgment of Acquittal.
On July 19, 2001, after the trial judge denied both post-trial motions, defendant waived sentencing delays. Thereafter, on that same day, the trial judge sentenced the defendant to seven years imprisonment at hard labor on each count to run concurrently. Defendant filed a written motion for appeal that day, which the trial judge granted.
FACTS
In March of 1999, S.A.[1] was living with her mother, sister and brother in an apartment on Tensas Street in Harvey. On or about the morning of March 24, 1999,[2] S.A. woke up about 6:00 a.m., dressed for school and left to catch the bus to school. The bus stop was about 20 buildings from her house.
While S.A. was walking to the bus stop, defendant, who S.A. knew from her aunt's neighborhood, drove up beside her in a black Nissan Sentra. He said hello to her then exited his vehicle. Defendant offered to take S.A. to school, but she refused. Defendant then insisted on taking S.A. to school and pulled S.A. forcefully by her arm toward the car. S.A. entered the car, as did the defendant.
Defendant pulled away from the bus stop and proceeded in a direction away from S.A.'s school. When S.A. told defendant they were going in the wrong direction and asked to go back to her bus stop, the defendant told S.A. they were going to his apartment so that he could get some money. Defendant drove to the Mary Poppins Subdivision, parked in the back of the complex two doors from his apartment, exited the car and went into his apartment. When he returned to the car, he opened the passenger door, grabbed S.A. by the arm, and pulled her toward the apartment. At that point, S.A. tried unsuccessfully to escape.
When she entered the apartment, she could see a young child to her left sitting on the stairs crying. She saw a sofa in the living room. Defendant pushed her onto the sofa but she got up. Defendant then tripped S.A. making her fall to the floor. He threw pillows from the sofa onto the floor. Defendant struggled to remove S.A.'s pants. Although S.A. was crying, telling defendant to stop and pushing on his chest to try to free herself, defendant got on top of her, inserted his penis in her vagina, and engaged in sexual intercourse. The victim estimated that the incident took 15 minutes.
After the rape, defendant told S.A. to get dressed and took her to school. Before letting her out of his car at school, defendant told S.A., "[Y]ou better not tell nobody or else I'm going to get you." S.A. understood this statement to mean that defendant would hurt or kill her if she told anyone. When defendant dropped her off at school that day, S.A. was no longer crying but she was very upset. Because of her fear, S.A. did not tell anyone about the assault.
On April 18, 1999, S.A. spent the night at her aunt's apartment on Crepe Myrtle Street in Harvey. The next morning, S.A. woke up, got dressed for school, and left her aunt's house to catch the bus to school. At first, S.A. was walking to the bus stop, which was about two blocks away from her aunt's house, with Kenneth Jordan, a *999 friend of hers whose aunt also lives in that area. Jordan, however, stopped at his aunt's house on the way to the bus stop.
Shortly after S.A. arrived at the bus stop, defendant drove up in his black Nissan Sentra. Defendant exited the vehicle and grabbed her tightly around the arm. S.A. tried to run, but she could not get away. She was crying when defendant shoved her into his car and sped away down the Westbank Expressway. When defendant stopped for the signal light at the corner of Lafayette Street and the Westbank Expressway, she jumped out of the car and ran towards her school, which is near that intersection. Although S.A. was still upset, she was no longer crying when she reached the school.
School had already taken in when she arrived. When she sought assistance in the school's office, S.A. was referred to Officer Lore. S.A. recounted both incidents to Lore. That day, Lore called Detective Vivian Menchel of the Jefferson Parish Sheriff's Office Personal Violence Unit to the school to interview S.A. about the rape. S.A. recounted the incidents to Detective Menchel. S.A. also testified to these incidents at trial.
Because S.A. was able to identify her assailant, Detective Menchel located his address and went to his apartment that afternoon. Before Menchel began the interview, she informed the defendant of his constitutional rights. He also signed a consent to search agreement for his apartment. According to Detective Menchel, the contents and layout of the apartment were consistent with the information supplied by the victim during her interview. The detective also took photographs of defendant's apartment and vehicle. Thereafter, Detective Menchel again advised defendant of his constitutional rights and invited him to give a statement, which he did.
In the statement, which was later introduced at trial, the defendant admitted knowing the victim for a year because his aunt lived on Crepe Myrtle Street in the vicinity of the victim's aunt's house. Defendant said that S.A. appeared to be about 14 years old but she had told him that she was 16 or 18 years old. Defendant stated that he and S.A. were "friends, but not close friends" and they talked on the phone every two or three months.
Defendant stated that he normally went to work at 6:00 a.m. but, on this particular day, he overslept and didn't get to work until 8:15 a.m. Defendant stated that when he worked the 7 o'clock shift, he would frequently see S.A. at the bus stop as she waited for the bus but that he had not seen her at the bus stop in over a year.
Defendant admitted that S.A. had been in his apartment but denied having sexual intercourse with S.A., talking to her about sex, or touching her in a sexual manner. He admitted that he had engaged in sex "hundreds of times" in his living room, in particular, on the living room floor after the sofa pillows had been thrown on the floor, because it was easier than going upstairs. Defendant stated that he had last seen S.A. on Crepe Myrtle Street two weeks before and he last spoke with her by phone four months prior. Defendant admitted that he drove a Nissan Sentra but denied that S.A. had ridden in his car.
Dr. Scott Benton, a forensic pediatrician, saw S.A. at Detective Menchel's referral on May 18, 1999. During the examination, Dr. Benton took a medical history, which he found to be consistent with sexual abuse. He also conducted a physical exam and a pelvic exam, which could neither confirm nor refute the history of sexual abuse. Dr. Benton postulated that the two-month delay in reporting in this case could have contributed to these findings because any injuries that may have been *1000 sustained would have had sufficient time to heal. Tests for sexually transmitted disease were negative.
The defendant testified on his own behalf at trial. At trial, defendant, as he had in his pre-trial statement, admitted knowing the victim but denied kidnapping or sexually assaulting her. He stated that he did not have a relationship with the victim. He stated that the victim called him on at least 20 occasions, often leaving messages. At trial, he testified that these calls made him uneasy and he told S.A. not to call him but did not report these calls to S.A.'s aunt. At trial, he also stated that the victim had once asked him to drive her to the mall, but he refused.
Chiquita Milton, the defendant's roommate at the time of the alleged attack, testified for the defendant at trial. She testified that she was not working when she lived with the defendant and she would stay at the apartment and care for defendant's son while the defendant worked. Ms. Milton denied any personal relationship with the defendant. Further, she testified that she at defendant's apartment watching defendant's son on the date of the alleged rape, March 24, 1999 and she did not see the victim at the defendant's apartment that day.
DISCUSSION
Defendant has raised issues on appeal regarding sufficiency of the evidence, erroneous denial of a mistrial, and improper jury instruction. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, such as the erroneous admission of evidence, the reviewing court should first determine the sufficiency of the evidence by considering all of the evidence, including evidence the trial court may have erroneously admitted. State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Mayeux, 94-105 (La.App. 5 Cir. 6/28/94), 639 So.2d 828, 834.
If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. However, if the appellate court finds that the totality of the evidence was sufficient to support the defendant's conviction, it must then determine whether the trial court erred in admitting the questioned evidence and, if so, whether the trial court's error requires a reversal of the conviction or was harmless. State v. Alexis, 98-1145 (La.App. 5 Cir. 6/1/99), 738 So.2d 57, 64, writ denied, 99-1937 (La.10/13/00), 770 So.2d 339. Accordingly, we will first address defendant's argument that the evidence was insufficient to support the jury's verdict and, if necessary, his remaining assignments of error.
On appeal, defendant argues, "No rational trier of fact, according the State the full benefit of the weight of the evidence of each and every witness and the full weight of all admitted exhibits, could rationally find defendant guilty of either forcible rape or second degree kidnapping (Cf. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979))." He specifically alleges that the evidence presented was insufficient to sustain a conviction for forcible rape and simple kidnapping because the only evidence presented at trial was the alleged victim's testimony. He claims that the charges were fabricated to punish him because the complaining teenager was infatuated with him and he did not reciprocate. He also points to the lack of physical evidence to support the victim's claims.
In reviewing the sufficiency of the evidence, due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable *1001 doubt." Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. The actual trier of fact is presumed to have acted rationally until it appears otherwise. State v. Mussall, 523 So.2d 1305 (La.1988).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Stec, 99-633, p. 4 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787. In the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hotoph, 99-243, p. 17 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writ denied, 99-3477 (La.6/30/00), 765 So.2d 1062 and 765 So.2d 1066.
The defendant in this case was convicted of forcible rape, a violation of La. R.S. 14:42.1, which reads, in pertinent part:
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

* * *
The defendant was also convicted of simple kidnapping, a violation of La. R.S. 14:45(1), which is defined as, "The intentional and forcible seizing and carrying of any person from one place to another without his consent."
As previously discussed, the stories relayed by the victim and the defendant are in conflict. The defendant denied kidnapping or raping the victim but admitted knowing the victim. He denied that she had ever been in his car but admitted that she had been in his house.
S.A., however, testified that, in March 1999, she was taken from a bus stop by the defendant on the pretext of being driven to school. She testified that the defendant removed her from the vehicle, took her into his apartment and forcefully engaged in vaginal sexual intercourse with her. She stated that she attempted to prevent the rape but she could not. She also testified that he threatened to harm her so she did not initially tell anyone of the assault.
She also testified that on April 19, 1999, defendant forcibly removed her from the street near the bus stop by her aunt's house. He placed her in his vehicle and sped away with her in the car, but she was able to escape when he stopped for a light.
S.A.'s testimony alone, even absent any additional physical evidence, was sufficient to establish the elements of the offense of forcible rape. State v. Hotoph, supra. Additionally, her testimony alone was sufficient to establish the elements of simple kidnapping. State v. Hawkins, 99-217 (La.App. 5 Cir. 7/2/99), 740 So.2d 768, 770. The jury heard both witnesses and chose to believe the victim and not the defendant. This is a credibility determination that rests with the trier of fact, which will not be reweighed on appeal. State v. *1002 Hotoph, supra. Under these circumstances, it appears that the State proved the essential elements of the charged offenses of forcible rape and simple kidnapping beyond a reasonable doubt.
In his next assignment of error, defendant contends that the trial court erred in denying defendant's objection and subsequent Motion for Mistrial on the ground that the "law officer witness testified that, inter alia, she identified the defendant from his criminal history background." He contends that Detective Menchel's reference to his "criminal history background" was an impermissible reference to inadmissible "other crimes" evidence.
At trial, Detective Menchel stated that she came to know the defendant's identity "through [the victim] identifying the apartment where the assault occurred. And then through a criminal history background." Defense counsel objected, which was overruled, and moved for a mistrial, which was denied. Defense counsel did not ask for an admonition. There is no allegation that the State purposely elicited Detective Menchel's remarks.
On appeal, the defendant argues that a mistrial should have been granted under La.C.Cr.P. art. 770. That article states:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
This Court has held that a policeman is not a "court official" and, thus, a mistrial under LSA C.Cr.P. art. 770 is not required. State v. Jones, 00-162, p. 6 (La. App. 5 Cir. 7/25/00), 767 So.2d 862, 866, writ denied, 00-2484, (La.6/22/01), 794 So.2d 783. Clearly, La.C.Cr.P. art. 770 does not apply.
The proper remedy, upon request of defendant, would be an admonition to the jury to disregard the remark. State v. Celestine, 98-1166 (La.App. 5 Cir. 3/30/99), 735 So.2d 109, 114, writ denied, 99-1217 (La.10/8/99), 750 So.2d 178. La.C.Cr.P. art. 771 states:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether *1003 the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. State v. Forrest, 95-31 (La.App. 5 Cir. 2/14/96), 670 So.2d 1263, writ denied, 96-0654 (La.6/28/96), 675 So.2d 1117. Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Brown, 96-1002 (La.App. 5 Cir. 4/9/97), 694 So.2d 435, writ denied, 97-1310 (La.10/31/97), 703 So.2d 19.
In State v. Celestine, 98-1166, p. 9 (La. App. 5 Cir. 3/30/99), 735 So.2d 109, 114, writ denied, (La.10/8/99), 750 So.2d 178, a similar complaint was lodged. In Celestine, a police officer testified regarding his identification of the defendant and stated in response to questioning at trial, "And when I got that name, I ran that subject's name through the national crime computer and got a pass [sic] criminal history...." Defense counsel moved for a mistrial, but did not seek an admonition. This Court affirmed the trial judge's refusal to grant a mistrial, stating, "In the present case, the officer did not refer to any specific crime committed by the defendant. He merely stated that he ran the defendant's name through the national crime computer, got a past criminal history and obtained a photograph."
Here, the defendant concedes that he did not ask for an admonition. The trial judge, who stood in the best position to assess its impact, heard the remarks and did not find the remarks to be prejudicial. We find no abuse of the trial court's discretion.
In his final assignment of error, the defendant contends that the trial court denied petitioner the right to a fair trial and erred in charging the jury "Not to go beyond the evidence to seek doubt." He alleges that the appropriate instruction would have been to inform the jurors that they should not go beyond the evidence to seek guilt. He alleges that such an instruction is patently erroneous thereby negating the necessity for a contemporaneous objection, relying upon State v. Gibbs, 355 So.2d 1299 (La.1978).
In State v. Penns, 99-2916 (La. 12/20/00), 758 So.2d 776, 778, n. 1, the defendant sought relief from a conviction which contained an alleged Cage[3] instruction on reasonable doubt similar to the charge at issue in this case. The supreme court reiterated that counsel's failure to object to a jury charge waived the claim.
In this case, at the close of trial, the trial judge called the prosecutor and defense counsel to the bench. On the record, the trial judge stated, and each attorney agreed, that they had met in chambers to review all of the jury charges. The record reflects that, "Those charges were accepted by both sides as written. However, a redaction or modification did occur as to the charge that the Bench typically uses regarding when the defendant does not testify."
Clearly, defendant did not object at trial to the charge that he now attacks on appeal. Moreover, defense counsel agreed to the jury instructions as written excluding *1004 the trial court's usual charge on self-incrimination, which is not the subject of defendant's assignment of error. Under these circumstances, both this Court and the Louisiana Supreme Court have held that defendant may not now be heard to complain on appeal. State v. Penns, supra, State v. Jackson, 96-661 (La.App. 5 Cir. 4/9/97), 694 So.2d 440, 445, writ denied, 97-1055 and 97-1255 (La.10/13/97), 703 So.2d 609, 612. Because this issue was not properly preserved for review, we will not address the merits of defendant's claim.
Finally, we have reviewed the record, according to LSA-C.Cr.P. art. 920. We have found the following errors patent, which require remand. First, the trial judge failed to restrict at least two years of defendant's sentence for forcible rape from benefit of parole, probation or suspension of sentence, as required by La. R.S. 14:42.1(B). Although the trial judge failed to mention the restriction, such conditions are deemed to exist by operation of law. La. R.S. 15:301.1; State v. Williams, (La.11/28/01), 800 So.2d 790, 799. In this case, as in Williams, supra, at 801, the language of the sentencing provision gives the trial judge discretion in determining the exact length of time that benefits are to be withheld. For that reason, we remand this case for re-sentencing in compliance with La. R.S. 14:42.1.
Second, the trial judge failed to advise the defendant, who was convicted of a "sex offense" as defined by La. R.S. 15:542(E), that he must register as a sex offender as required by La. R.S. 15:540. We instruct the district court, during re-sentencing, to give written notice to the defendant of the registration requirement of LSA-R.S. 15:542 and, further, that a copy of the notice and evidence of delivery be filed in the record. See, State v. Stevenson, 00-1296 (La.App. 5 Cir. 1/30/01), 778 So.2d 1165.
AFFIRMED; REMANDED FOR RESENTENCING.
NOTES
[1] In accordance with La. R.S. 46:1844(3), the victim, a minor, will be referred to by her initials to protect her identity.
[2] She was unsure of the exact date in March 1999, but estimated it was about a week before her Easter break.
[3] Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).