COOKS, Judge,
dissenting.
Alvin Sam is before this court on a third application for post-conviction relief which questions the constitutionality of the reasonable doubt instruction given at his second trial. Confronted by clear federal and state jurisprudence, we must hold the at issue jury charge violated Sam’s due process right to evidentiary proof of his guilt “beyond a reasonable doubt.” More troublesome, however, are the questions which result from this finding. Is Sam barred from asserting the jury instruction error by post-conviction petition because of his trial attorney’s failure to contemporaneously object to the charge? I think not. Must we apply the holding in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1991), “retroactively” to this post-conviction relief petition seeking correction of the acknowledged constitutional error, particularly considering the recent United States Supreme Court’s decision in Sullivan v. Louisiana, — U.S. -, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)? The majority says NO and cites State ex rel. Taylor v. Whitley, 606 So.2d 1292 (La.1992), a Louisiana Supreme Court case which refused to give retroactive effect to Cage, now prohibiting the use of similar instructions. I disagree and join Chief Justice Calogero and Justice Dennis, both dissenting in State ex rel. Taylor. In a two paragraph ruling on this complicated application, this court’s majority did not favor us with any thoughts, if any, they entertained regarding the “impact” of Sullivan on the non-retroactivity holding in State ex rel. Taylor and a Fourth Circuit holding in State v. Dobson, 578 So.2d 533 (La.App. 4th Cir.1991), writ denied, 588 So.2d 1110 (La.1991), finding Gage errors are subject to the contemporaneous objection requirement in non-capital cases.
Twice tried for the offense of second degree murder, Sam’s saga began in a night club where he joined in a poker game. An argument ensued between Sam and Milton Leday over the rules of the game which quickly became confrontational. Leday slapped Sam on the side of the head causing him to fall back against a handrail. Sam eventually pulled a .22 caliber handgun and fired one shot into Leday’s abdomen. Three days later, Leday died.
As gleaned from the Louisiana Supreme Court’s opinion reversing Sam’s first conviction, the defense essentially hinged on whether Sam’s stated apprehension regarding Milton Leday’s dangerous propensity provided a plausible self-defense explanation for his conduct which might have created in the jurors’ minds “reasonable doubt” sufficient to lessen or excuse Sam’s full culpability for the crime of second degree murder. As noted, “to aid in the retrial of [the] ease,” the Supreme Court addressed several assignments raised by the defense urging trial court error in excluding evidence offered to show Sam’s *2 “state of mind” and the reasonableness of his conduct under the circumstances, including the presence of a knife in the area where Leday fell after the shooting; criminal records offered to show Leday’s propensity for “beating up and cutting up” people; and Sam’s testimony relating previous altercations with the Leday family to explain his decision to carry a pistol.
The admission of this evidence at the second trial undoubtedly factored heavily in the jury’s deliberation causing it to return a lesser verdict of manslaughter. This is not a murder case where the evidence patently portrayed defendant’s “state of mind” through the outrageousness of his action, rendering a self defense plea frivolous to reasonable minds. An erroneous “reasonable doubt” instruction may have materially affected the jury’s decision to return any verdict of “guilt” against Sam, particularly considering their obvious acceptance (in part) of his “justification” explanation.[1]
We must find the reasonable doubt instruction given at Sam’s second trial was erroneous. His trial occurred in September, 1984, nearly one year after finality of the State Supreme Court’s decision in State v. Mack, 403 So.2d 8 (La.1981) later affirmed and followed in State v. McDaniel, 410 So.2d 754 (La.1982). Both cases unequivocally established the specific reasonable doubt charge given at Sam’s second trial violated the language of La.C.Cr.P. article 804. Delivering the instruction, the trial judge said to the jury:
“The burden is therefore upon the State to establish to your satisfaction and beyond a reasonable doubt the guilt of the defendant as to the crime charged in the bill of indictment or any lesser responsive verdict in it. If you entertain any reasonable doubt as to any fact or element necessary to constitute the defendant’s guilt, then it is your sworn duty to give him the benefit of that doubt and return a verdict of acquittal. This doubt must be a reasonable one that is one found upon a real, tangible, substantial basis and not upon mere caprice, fancy, or conjecture. It must be such a doubt that would give rise to a great uncertainty raised in your minds by reasons of the unsatisfactory character of the evidence. It must be one that would make you feel morally uncertain as to the defendant’s guilt. If after giving a fair and impartial consideration to all the facts in the case you find the evidence unsatisfactory upon any single point indispensably necessary to constitute the defendant’s guilt, this would give rise to such a reasonable doubt as would justify your rendering a verdict of not guilty. However, you are prohibited by law and your oath from going beyond the evidence to seek doubts upon which to acquit the defendant. You must confine yourself strictly to a dispassionate consideration of the evidence presented upon the trial. You must not resort to extraneous facts or circumstance in reaching your verdict.”
The above italicized language was criticized by the Louisiana Supreme Court in State v. Gibbs, 355 So.2d 1299 (La.1978) where it characterized a similar charge as “patently erroneous,” and instructed that it “should not be given.”[2] This language was held objectionable because La.C.Cr.P. article 804(A)(2) permits jurors to find reasonable doubt not only from the evidence before them, but also the “lack of evidence in the case.” Citing the Gibbs case in State v. Mack, supra, the Supreme Court expressly outlawed the infirmed charge and also made it mandatory that trial judges read the exact language contained in La.C.Cr.P. article 804. In addition to the mentioned italicized language found statutorily infirmed in State v. Mack, supra, the State Supreme Court reasoned in State v. McDaniel, supra, the following language, also used in Sam’s case, violated “due process” requirements:
*3 “It must be such a doubt that would give rise to a great uncertainty raised in your minds by reason of the unsatisfactory character of the evidence. It must be one that would make you feel morally uncertain as to the defendant’s guilt.”
In reaching its decision, the court noted:
“[AJlthough portions of the charge are correct, by redefining “reasonable doubt” as “a doubt that would give rise to a great uncertainty” and “one that would make you feel morally uncertain as to the defendant’s guilt,” the trial court’s instruction created a reasonable possibility the jury was misled into applying an insufficient standard. Even when the phrase “greater uncertainty” is viewed in the context of the whole charge it overstates the degree of uncertainty required for a reasonable doubt. Cf. United States v. Alvero, 470 F.2d 981 (5th Cir.1972). “Morally uncertain” could be interpreted to mean that the uncertainty must be based on feeling, i.e., lack of moral indignation rather than a reasonable doubt about an essential fact. Cf. United States v. Indorato, 628 F.2d 711, 720-721 (1st Cir.1980).
An instruction which misleads or confuses the jury as to the meaning of reasonable doubt may create an error of constitutional dimensions. As stated by the United States Supreme Court in recognizing the inevitability of error even in criminal cases, “[w]here one party has at stake an interest of transcending value — as a criminal defendant his liberty — this margin of error is reduced as to him by the process of placing on the other party the burden ... of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt.” Speiser v. Randall, 357 U.S. 513, 525-526, 78 S.Ct. 1332, 1341-42, 2 L.Ed.2d 1460 (1958). In 1970, the high court explicitly held that the due process clause “protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” In Re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970).
The trial court is not required to define reasonable doubt or give any other or further charge than that contained in the article. La.C.Cr.P. art. 804. Because of the crucial importance of the instruction, and because the explanations themselves often need more explanation than the term explained, McCormick, § 341, p. 800, it is usually preferable to read only the exact language of Article 804 to the jury.”
When Sam was tried the second time, jurisprudence existed from the highest court in this State recognizing the identical charge used in his case suffered from two infirmities[3] which violated state statutory law, as contained in La.C.Cr.P. article 804, and the “due process” clause of the United States Constitution which “protects the accused against convictions except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.”[4] In Re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970).
*4 The State trial courts, however, persisted in using similar erroneous instructions even after Sam’s trial. Faced with the apparent dilemma of educating trial judges compounded by the shear number of cases tainted by such erroneous instructions, the Louisiana Supreme Court began withering away at the mandatory language and strength of its decisions in Mack and McDaniel. The holdings in these cases were diluted later by reference to several prior cases in which the court reviewed such instructions “as a whole ” to determine whether reasonable persons of ordinary intelligence would understand the definition of “reasonable doubt.” State v. Messiah, 538 So.2d 175 (La.1988); State v. Taylor, 410 So.2d 224 (La.1982); and State v. Stramiello, 392 So.2d 425 (La.1980). The most notable of these watered-down cases is State v. Cage, 554 So.2d 39 (La.1989), decided after Sam’s conviction became final. Interestingly, these cases sought to excuse by use of the “taking as a whole” rule only instructions which suffered from the second infirmity. The “going beyond the evidence” error, squarely addressed and outlawed in State v. Mack, was not affected by this later line of thinking. State law and jurisprudence then and now require reversal of Sam’s conviction for the first defect.[5] The “taking as a whole” rule employed in Cage resurfaced in State v. Taylor, 410 So.2d 224 (La.1982), one month prior to State v. McDaniel. While considerable dispute exists regarding the significance of Taylor’s rehearing denial following rendition of McDaniel, in effect the “taking as a whole” rule served to excuse the second defect much like the “harmless error” rule found invalid by the United States Supreme Court in Sullivan v. Louisiana, supra. Both rules necessarily were premised on an admission that such instructions were marred by unacceptable language; however, they worked to forgive these trial transgressions by lessening their impact through employment of two entirely “speculative” analyses. I do not believe this unfortunate period in our jurisprudence suffice to negate judicial awareness that these charges were statutorily and constitutionally infirmed. Thus, I conclude at the time Sam was tried, state and federal ease law fully recognized the at issue charge contained two infirmities.[6]
Because I believe this case requires reversal for other constitutional reasons as well, I elect at this juncture to focus briefly on the federal cases which followed the original Supreme Court decision in Cage v. Louisiana, supra. Granting writ of certiorari in Cage, the United States Supreme Court found similar reasonable doubt language violative and contrary to the evidentiary burden of proof standard required by the due process clause and long articulated by it in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). It footnoted several federal appellate court eases criticizing attempts to use similar definitions of reasonable doubt. Still faced with numerous convictions tainted by such erroneous reasonable doubt instructions, the Louisiana Supreme Court on remand of the Cage case, nevertheless, affirmed the conviction reasoning the constitutional error recognized by the U.S. Supreme Court was subject to Louisiana’s “harmless error” rule. Later, in *5 State ex rel. Taylor v. Whitley, 606 So.2d 1292 (La.1992), the Louisiana Supreme Court refused to “retroactively” apply the Cage decision. Recently, in Sullivan v. Louisiana, supra, reviewing a charge identical to that used in Cage, the U.S. Supreme Court held a constitutionally deficient reasonable doubt instruction cannot be harmless error and such instruction vitiates all the jury’s factual findings. The court clearly likened these instructional errors to those inexcusable “structural” errors mentioned in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) as opposed to mere trial error which are subject to the “harmless eiTor beyond a reasonable doubt” analysis.
In doing so, the U.S. Supreme Court pointed out while most constitutional errors have been held amendable to the harmless-error analysis, “some will always invalidate the conviction,” citing Gideon v. Wainwright, 372, U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (total deprivation of the right to counsel) Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (trial by a biased judge); and McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (right to self-representation). The Court stated a defective reasonable doubt charge results in the absence of a jury verdict within the meaning of the Sixth Amendment.
Despite the U.S. Supreme Court’s obvious attempt (magnified by a unanimous opinion) to convey a message to Louisiana Courts that reasonable doubt instructional errors defy employment of any analysis which would permit affirmance of such convictions, this court’s majority has decided to rely on the State Supreme Court’s holding in State ex rel. Taylor, decided prior to Sullivan, refusing to apply Cage retroactively.
Correctly recited in State ex rel. Taylor, generally, decisions which import “new constitutional” rules are not given retroactive effect on collateral review of a final conviction. However, the U.S. Supreme Court has recognized certain decisions may demand retroactive application. A decision should be applied retroactively if it is controlled by a prior decision or its path is dictated by the “logical compass” of an earlier decision. Granted, it is often difficult to determine whether a decision establishes a “new"rule” or simply contains a pronouncement which, through “good faith” interpretation, “ought to be understood” as inevitable from prior precedent. See Saffle v. Parks, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); Butler v. McKellar, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990); Yates v. Aiken, 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988); Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1988). As Teague announced the decision must constitute a “clear break” with prior judicial holdings. See also Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Each case’s retroactive determination, thus, turns on whether the state or government, employing an objective standard, should have reasonably anticipated the finding. Critical to such inquiry is an examination of the state’s prior jurisprudence which may reveal “awareness” of the declared constitutional violation. Accordingly, constitutional error cases which do not establish “new rules” must be applied retroactively. Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); and Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).
If the court determines a case establishes a new rule, it must next decide whether this “new rule” is entitled to retroactive effect by employing the analysis finally adopted in Teague v. Lane, supra, which curves out two exceptions to the general non-retroactivity doctrine. The first exception grants retroactive effect to a new rule if it places “certain kind of primary, private individual conduct beyond the power of the criminal law-making authority to prescribe.” For example, in Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), the U.S. Supreme Court held insane defendants could not be executed. As a consequence, the “new rule” prohibited the imposition of capital punishment upon a class of persons which entitled it to retroactive application. There is no disagreement that the first exception does not apply to Cage errors. The second exception, commonly referred to as the “watershed or bedrock” exception is more difficult to define and to determine its presence *6 or absence in a given case. This exception dictates retroactive application of a “new rule” if it requires observance of those procedure that are implicit in the concept of ordered liberty, or the absence of such rule seriously threaten the likelihood of an accurate conviction. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
Unlike the majority in State ex rel. Taylor, I am convinced the Cage decision did not impose a new obligation on the State of Louisiana. The U.S. Supreme Court decisions in Jackson v. Virginia, supra, and In Re Winship, supra, were rendered before Sam’s conviction became final. The United States Supreme Court also in Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), held that conclusive presumptions or instructions which shift the burden of persuasion violates the Fourteenth Amendment’s requirement that in every criminal trial, the state is required to prove each element of the criminal offense beyond a reasonable doubt. In State v. Mack, supra, and State v. McDaniel, supra, the Louisiana Supreme Court undoubtedly mindful of the holdings in these cases, as well as state statutory law, barred the use of reasonable doubt instructions identical to that given in Sam’s ease and referenced the “due process clause,” citing In Re Winship, supra, and Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958).
Significantly, Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) was a per curiam reversal. Framing the issue before it, the United States Supreme Court stated “[t]he issue ... is whether the reasonable doubt instruction in this case complied with Winship.” Answering this query in the negative, the Court said, “it is our view ... that the instruction at issue was contrary to the ‘beyond a reasonable doubt’ requirement articulated in Winship.” The Court also cited Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). In Yates v. Aiken, 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988), the Court applied Franklin retroactively to cases on habeas review noting it did not establish a “clear” break in prior law as enunciated in In Re Winship, supra. See also Sandstrom v. Montana, supra. In United States v. Johnson, 457 U.S. 537, 549, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the United States Supreme Court made clear “[wjhere a decision ... merely has applied settled precedents to new and different factual situations, no real question has arisen as to whether the later decision should apply retroactively ... it has been a foregone conclusion that the rule of the later applies in earlier cases, because the later decision has not in fact altered that rule in any material way.” See also Teague v. Lane, supra; Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) and Yates v. Aiken, 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988). Sam is entitled to the benefit of these decisions on post-conviction review under the retroactivity principle adopted in Griffith v. Kentucky, supra, and followed in Penry v. Lynaugh, supra. It was clear at the time of Sam’s conviction the State could not, consistent with the Sixth and Fourteenth Amendment as articulated in In Re Winship and Sandstrom v. Montana, supra, use the reasonable doubt instruction given in this case which suffered from two infirmities: one which prevented jurors from considering the “absence of evidence;” and the other which lessen the “degree of proof’ below the “reasonable doubt” requirement of the 14th Amendment. Unquestionably, the at issue charge operated in practice to lower the degree of proof much like the presumption charges stroke down as constitutionally infirmed in In Re Winship, Sandstrom, and Francis. Subsequent judicial endeavors to excuse the use of such tainted charges do not provide “good faith” reliance on prior jurisprudence or pose confusion regarding the existence of previously recognized constitutional errors.
Moreover, I am persuaded by Chief Justice Calogero’s and Justice Dennis’ reasoning regarding the application of Louisiana’s ret-roactivity provisions to Cage error cases. Although the Supremacy clause contained in the U.S. Constitution requires adherence to federal case law on retroactivity of decisions recognizing constitutional violations; nevertheless, state laws or jurisprudence which are not in conflict with federal retroactivity doctrine may be applied if, as evident here, they favor retroactive application. As recog *7 nized by the dissenters, the Louisiana Constitution Article I § 21 provides “[t]he writ of habeas corpus shall not be suspended;” and Louisiana Code of Criminal procedure article 930.3(1) clearly provides a petitioner in custody after sentence for conviction of a criminal offense shall be granted such relief if “[t]he conviction was obtained in violation of the constitution of the United States or the State of Louisiana.” Neither the evolution of federal jurisprudence or the U.S. Constitution’s Supremacy clause require abandonment of this State’s laws compelling “retroactive” application of the Cage decision.
Furthermore, even if the majority correctly concluded Cage established a “new rule,” I believe the Sullivan holding renders the Teague’s analysis inapplicable in Cage error cases. Sullivan suggests Cage errors may not be analytically susceptible of scrutiny, at all, under any theory which ultimately would prevent retroactive correction. Pointing out the illogical use of Chapman v. California, supra, harmless-error review in cases involving Cage errors, the court first noted in such cases there are “no jury verdict[s] within the meaning of the Sixth Amendment.” Keeping with this holding, I believe we must find there are no verdicts in Cage error cases susceptible of Teague’s retroactive analysis. As the U.S. Supreme Court stated “to hypothesize a guilty verdict that was never in fact rendered, no matter how inescapable the finding to support that verdict might be would violate the jury-trial guarantee.” Unmasked and given its most elementary interpretation, this finding means: Sam was not convicted and thus there is nothing to set aside or review.
Perhaps, more telling, is the U.S. Supreme Court’s recognition that Cage errors equated with those errors found in several cases (including Gideon v. Wainwright, supra), all requiring retroactive application, and its acknowledgment that:'
“The right to trial by jury reflects, we have said, ‘a profound judgment about the way in which law should be enforced and justice administered.’ Duncan v. Louisiana, 391 U.S. [145], at 155, 88 S.Ct. [1444], at 1451 [20 L.Ed.2d 491]. The deprivation of that right, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as ‘structural error.’ ”
Strained to conceptualize how the State Supreme Court’s majority might breathe life into convictions which never existed, these phantom verdicts cannot escape Teague’s second exception. Sullivan eliminates all doubt regarding characterization of the “new rule” found in State ex rel. Taylor. The instruction error in Cage strikes at the core of the jury’s factual findings. The Sullivan decision undeniably placed the Cage decision in the same category with those already recognized as setting forth a watershed rule of criminal procedure or altering our understanding of the bedrock procedural elements of a fair trial. The decision compels retroactive application of Cage in this case. Fatal to the majority’s reasoning in State ex rel. Taylor is its own recognition that new rules which “alter our understanding of bedrock procedural elements” (such as found in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) must be applied retroactively. The majority’s conclusion that the “new rule” announced in Cage did not set forth a watershed rule of criminal procedure as in Gideon or alter our understanding of the bedrock procedural elements of a fair trial was squarely premised, wrongly, on a belief that the Cage decision “set forth a new rule designed to give guidance to these courts in the. future and eliminate the possibility of juror confusion,” rather than creating “a new procedure without which the likelihood of an accurate conviction is seriously diminished.” Based on the majority’s postulation of its holding, perhaps (if revisited) the then regular members of the court, joined by the dissenter, now will concede Cage must be applied retroactively whether they adopt federal law, as previously relied upon, or state law, as suggested by the dissenters. In any event, the newly constituted court may find the original majority’s reasoning indefensible in light of Sullivan.
My resolution of the “retroactivity issue” also requires a finding that Sam is not barred from raising the Cage error by post-conviction application because of his attorney’s failure to contemporaneously object to *8 the charge. It logically follows if a Cage error vitiates the conviction, then failure to object to the charge constitute “harmless” attorney error. Furthermore, even State v. Dobson, supra, affirmed there are certain exceptions to the contemporaneous objection requirement, specifically noting those cases involving constitutional claims. Also, as discussed earlier, Louisiana Constitution Article I § 21 and Louisiana Code of Criminal procedure article 930.3(1) permit a defendant by habeas application to seek relief on the grounds that his conviction was obtained in violation of the Constitution of the United States or the State of Louisiana. These provisions preempt the statutory contemporaneous objection requirement of Louisiana Code of Criminal procedure article 841, as recognized in the article’s Official Revision Comment which agrees “[o]f course, certain rights are so basic that they can be raised for the first time in the motion in arrest of judgment (Art. 859), in an application for a writ of habeas corpus (Art. 362), or in a motion for new trial (Art. 851).”
For these reasons and more, I dissent and place my wager on the dissenters in State ex rel. Taylor.

. Even application of the harmless-error rule, now invalidated by the United States Supreme Court’s decision in Sullivan v. Louisiana, - U.S. -, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), probably would not yield affirmance of Sam's conviction considering the factual circumstances of his case.

. However, like the present case, the defendant failed to contemporaneously object to the charge resulting in the court's decision to affirm his conviction.

. As noted, the first infirmity was outlawed in State v. Mack, 403 So.2d 8.

. While the majority in State ex rel. Taylor v. Whitley attempts to "muddy" the waters by referring to State v. Taylor, 410 So.2d 224 (La.1982), decided a month prior to State v. McDaniel, 410 So.2d 754 (La.1982), I do not share their appreciation that a rehearing denial in Taylor effectively overruled McDaniel. Rather, I find Justice Dennis’ dissenting criticism more persuasive:
“Furthermore, the majority's statement that the denial of rehearing in Taylor was the judgment of the regular seven member court and therefore the prevailing law is incorrect and unwise. That statement implies that any decision of this court in which a justice ad hoc or pro tempore participated is inherently suspect or vulnerable because the precedent represented by that decision was not the judgment of the full seven member court. Such an interpretation is inherently hubristic, undermines precedent and stare decisis by creating a hierarchy of state supreme court decisions, and dos not comport with any jurist's notion of the validity of cases previously adjudicated by this court. Furthermore, it does not augur well for our ability to command respect for this court’s jurisprudence during the approaching "Eight Justice” period of our judicial history. See La.Acts 1992, No. 512."
In any event, my decision does not turn ultimately on the resolution of our intellectual dispute.

. Because I believe the Cage holding must be applied retroactively, I forego fully examining whether Sam may raise the first defect by post-conviction petition absent a contemporaneous objection to the charge. The invalidation of this portion of the charge was grounded on state statutory law rather than "due process” requirements. Curiously however, the Supreme Court stated in Mack "a correct understanding of reasonable doubt is essential in every criminal jury trial.” This prefatory recognition, at least, suggests constitutional considerations may have played a role in the court's decision-making process. Restricting the jury’s reasonable doubt consideration to record evidence also lessens the state's burden of proof, particularly in "state of mind” cases where often an absence of physical proof exists. Still, even if the first defect constituted a "due process” violation, and I believe it did, the question remains whether this error like that found in Cage is subject to retroactive correction. As an aside, I note Sam’s trial attorney confessed he was not aware of the holding in Mack or McDaniel, and as late as last year, when he appeared at the post-conviction evidentiary hearing, he still had not heard of the holdings in these cases. Sam’s ineffective assistance of counsel claim may merit further attention.

. I believe the confusion which later manifested stemmed from the judiciary’s "floodgate” fear and apprehension when confronted with the reality that a substantial number of criminal cases may require reversal and retrial.